336 So.2d 738 (1976)
MONARCH INSURANCE COMPANY OF OHIO
v.
Grady COOK, Jr.
No. 48731.
Supreme Court of Mississippi.
August 17, 1976.
*739 Mize, Thompson & Blass, Gulfport, Joseph P. Tynan, New Orleans, La., for appellant.
Page, Mannino & Peresich, Biloxi, for appellee.
Before PATTERSON, P.J., and ROBERTSON and BROOM, JJ.
ROBERTSON, Justice, for the Court:
Monarch Insurance Company of Ohio, a non-resident corporation, insurer of Biloxi Machine Works, Inc., appeals from a judgment for $64,015 rendered against it, and in favor of Grady Cook, Jr., by the Circuit Court of Harrison County on a writ of garnishment suggested by Cook.
Cook first brought suit against Biloxi Machine Works, Inc., a Mississippi corporation, for the loss of his tugboat "Capt. Bull" which sank while being operated on a test run by Biloxi Machine Works, Inc., the contract repairer. This first suit resulted in a judgment for Cook rendered on May 10, 1973, and the writ of garnishment was based on this judgment against Monarch's insured.
Monarch interposed three affirmative defenses:
First, the insurer was not given notice by the insured "of any legal proceeding being filed against it and further failed, after being served with process, to forward a copy of the Summons to the Garnishee Defendant, and by such actions did thereby relieve any duty of the Garnishee" to defend or indemnify the insured under the policy. In support of this defense, Monarch quoted paragraph 7 of the policy:
"It is further stipulated and is a consideration for this insurance that in the event of any occurrence which may result in loss, damage and/or expense, for which these Assurers are or may become liable under this insurance, notice thereof shall be given to this Company as soon as practicable, and further, that any and every process, pleading and paper of any kind relating to such occurrence shall be forwarded promptly to this Company." (Emphasis added).
Second, the insured "had removed its vessel to Fletcher's Shipyard in Pascagoula, Mississippi, ... and by removal in excess of fifteen (15) miles violated the terms of the policy." Monarch quoted Paragraph 1A of the policy:
"1. This insurance is to cover the legal liability of the Assured as ship repairers upon the terms and conditions and subject to the limitations hereinafter set forth.
A. This insurance covers the legal liability of the Assured as ship repairers for loss or damage to vessels, craft, and equipment, cargoes, freights, and other interests on board, which are in their care, custody or control for the purpose of alteration or repair at locations within the United States or while such vessels or craft are being shifted and/or moved via inland waters for distances not in excess of fifteen miles in connection with their repair or alteration." (Emphasis added).
Third, James Garland, president of the insured, Biloxi Machine Works, Inc., "did violate the provisions of Paragraph 8 of the attached insurance policy" by admitting liability for the alleged accident out of which the claim of Grady Cook, Jr. arose. Paragraph 8 provides:
"8. In respect of any accident or occurrence likely to give rise to a claim under *740 this insurance, the Assured is obligated to and shall take such steps to protect its (and the Assurers') interests as would reasonably be taken in absence of this or similar insurance. This insurance, however, shall be void and of no force or effect, in respect of any accident or occurrence, in the event the Assured shall make or shall have made any admission of liability either before or after such accident or occurrence or in the event the Assured shall interfere in any negotiations of the Assurers for settlement or in any legal proceedings in respect of any claim for which the Assurers are or may be liable under this insurance."
The circuit judge in his written opinion said:
"After approximately eight months of work on the vessel, a bad vibration was experienced during trial runs. At that time, Jim Garland, President and Manager of Biloxi Machine, decided to take the `Capt. Bull' to the nearest shipyard which could haul the vessel from the water. The vessel was taken to Fletcher's Shipyard in Pascagoula, Miss., and repairs were made to the vessel after it was hauled from the water.
"At approximately sunset on January 15, 1973, the vessel was returned to the water at Pascagoula... . The vessel set out from Pascagoula with Garland acting as master of the vessel and two of his employees acting as crew... . At approximately 3:00 a.m. on the morning of the 16th, Garland was working in the engine room and his employee, Joe Hahn, was steering the vessel. Garland had detected further vibrations in the engine and was working to locate and correct them. Due to either a faulty steering mechanism installed by Biloxi Machine or to oversteering by Hahn, the vessel went into a hard turn at a high speed and capsized. Fortunately, all aboard were rescued."
The circuit judge in his written opinion found:
"On or about January 28, 1973, a notice of loss was transmitted by Mickey Bellande, Garland's Insurance Agent, to Harry Gauthreaux, the Branch Manager for William H. McGee and Company, New Orleans, La. William H. McGee and Company is a General Agent for Garnishee, Monarch Insurance Co. (Hereinafter Monarch Insurance). Gauthreaux employed Arthur Terry, a Marine Surveying Firm, to investigate the claim. On January 29, 1973, Gauthreaux received Terry's initial report. Terry's second report was dated February 8, 1973, and stated that the site of the sinking was 14.1 nautical miles from the Biloxi Machine Yard in Biloxi. (Emphasis added).
"Gauthreaux informed Monarch Insurance that there was no liability under the policy and on February 15, 1973, forwarded the claim file to Charles Dittmer, Jr., an attorney in the firm employed to represent Monarch Insurance. On February 16, 1973, Dittmer prepared a memo which stated that `... There is no coverage due to the shifting over fifteen miles, however, allegations in any suit filed against the assured may require underwriters to afford a defense even though they are unfounded. Any final determination of coverage should await the receipt of petition or complaint against assured ...'
"At various times from February 5 through March 15, 1973, Garland repeatedly made phone calls to either Gauthreaux or Dittmer. Although he was told that there was a question of coverage throughout the various conversations, Garland was never definitely told whether the loss was or was not covered under the policy.
"On March 15, 1973, Garland and the attorney for Biloxi Machine, Charles Morris, called Dittmer. Dittmer testified that he told Morris that the coverage was still unclear and that a final determination would have to await the allegations made in any suit filed against Biloxi Machine. Dittmer further testified that Morris assured him that if suit was filed, Morris would send him a copy of the *741 declaration. Morris testified to basically the same conversation but denied any assurance that he would send the declaration. Dittmer advised Morris to tell Garland not to call him anymore since Garland was represented by Morris.
"Both Morris and Lyle Page, attorney for Plaintiff Cook, had written numerous letters to Dittmer inquiring of Monarch's position. None of this correspondence was answered.
.....
"On April 20, 1973, Bellande wrote to the Mississippi State Insurance Commissioner alleging that the representatives of Monarch Insurance Company had done nothing about the loss and that `My client is at this time being sued by the Biloxi Barge Co., owner of this vessel.' The letter showed carbons to Gauthreaux and Sam B. Reid Agency, Monarch's Mississippi Agent. By letter dated April 25, 1973, the Insurance Commissioner's Office also forwarded a copy of Bellande's letter to Gauthreaux and the Sam B. Reid Agency. Although Gauthreaux and Dittmer admitted receiving the correspondence, no reply was made."
The circuit judge thus found that actual notice of the occurrence and claim were repeatedly given to Monarch, and that actual notice of the filing of suit was given. Moreover, the Court found that Monarch had in effect denied coverage and thus waived any further notice of the filing of suit.
The lower court was correct in finding against Monarch on its first affirmative defense for these reasons:
1. Paragraph 7 does not provide for voiding coverage for failure to forward a summons;
2. Since Monarch's general agents and its attorney were given actual knowledge of the suit, there was substantial compliance with paragraph 7;
3. Monarch failed to plead or prove that it was prejudiced by the failure to forward a copy of the summons; and
4. By denying coverage, Monarch waived its right to insist on the forwarding of suit papers.
The second affirmative defense was that the tugboat was moved more than 15 miles and thereby Paragraph 1A of the policy was violated.
Where an insurance contract is susceptible of two reasonable interpretations, the one will be adopted which sustains the claim for indemnity. If the language of the policy is ambiguous it should be construed more strongly in favor of the insured. In addition, the policy terms must be construed in the light of the purposes and hazards against which it was designed to protect. Griffin v. Maryland Casualty Company, 213 Miss. 624, 57 So.2d 486 (1952).
Paragraph 1A would seem to cover two types of risks which are separated by the disjunctive participle "or". 1A assumes the risk of "the legal liability of the Assured as ship repairers for loss or damage to vessels ... and other interests on board,"
1. Which are in their care, custody or control for the purpose of alteration or repair at locations within the United States,
OR
2. While such vessels or craft are being shifted and/or moved via inland waters for distances not in excess of 15 miles in connection with their repair or alteration.
Clearly at the time of the sinking, the insured was within the terms of the first alternative of paragraph 1A of the policy. The "Capt. Bull" was in the care, custody and control of the insured's president, Garland. He was acting as master of the vessel while two of his employees were acting as the crew. The proof shows that the vessel had been placed in insured's possession for extensive repairs. Repairs were actually being performed by Garland, who was in the engine room attempting to remedy a vibration at the time of the sinking. Also, clearly, the repairs were being performed *742 at a location within the United States.
The circuit court concluded:
"[I]t is this Court's finding that the loss incurred fell within the terms of the `legal liability' of defendant Biloxi Machine as ship repairers for loss or damage to vessels ... which are in their care, custody and control for the purpose of alteration or repair at locations within the United States.' The loss was within the risk reasonably contemplated by the parties as covered by the policy."
This Court agrees with this conclusion. It is abundantly supported by both the evidence and the law.
In answer to the third affirmative defense, suffice it to say that no collusion or fraud between plaintiff Cook and defendant Biloxi Machine Works was charged, nor was any evidence of collusion or fraud adduced. The coperation clause of the policy does not require the insured to falsify any of the facts or put up a sham defense.
The findings of fact and conclusions of law of the lower court are amply supported by the evidence, and its judgment should be affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.