733 So.2d 320 (1998)
Reba BAITES, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 97-CA-00150 COA.
Court of Appeals of Mississippi.
December 8, 1998.
Rehearing March 23, 1999.
Certiorari Denied May 27, 1999.
*321 Dana J. Swan, Clarksdale, Attorney for Appellant.
Robert L. Moore, Attorney for Appellee.
Before McMILLIN, P.J., and DIAZ, HINKEBEIN and PAYNE, JJ.
HINKEBEIN, J., for the Court:
¶ 1. This conflicts of law case stems from an automobile accident involving the plaintiff, Reba Baites, and another, at-fault but underinsured driver. In an attempt to procure additional compensation for her resulting injuries, Baites is now attempting to "stack" her own uninsured motorist coverage with that of her daughters with whom she lived at the time of the incident. In considering her enforcement actions and accompanying bad faith suit, the De-Soto County Circuit Court found Tennessee law applicable, forbidding the practice of "stacking." The trial court granted summary judgment in favor of State Farm. Aggrieved by the lower court's decision, Baites initiates this appeal to review the following issue.

I. DID THE TRIAL COURT ERR IN APPLYING THE LAW OF TENNESSEE INSTEAD OF THE LAW OF MISSISSIPPI IN DETERMINING THAT THERE WAS NO UNINSURED MOTORIST COVERAGE AVAILABLE UNDER THE POLICY OF INSURANCE ISSUED BY STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY?
Holding this assignment of error to be without merit, we affirm the judgment of the circuit court.

FACTS
¶ 2. At the time of the collision, Baites held an uninsured motorist policy issued by State Farm Mutual Automobile Insurance Company which provided for $10,000 in coverage. In addition, her two daughters, Judy Baites and Amy Partridge, held similar policies on their respective vehicles. Judy was insured by Nationwide Mutual Insurance Company and Amy held a $50,000 policy issued by State Farm. The second State Farm policy is the subject of this appeal since, in addition to her own policy, Baites has unsuccessfully claimed coverage under the bodily injury provision therein.
¶ 3. In reviewing State Farm's motion for summary judgment, the trial court assumed Baites' status as an insured under the terms of the Partridge policy and proceeded directly to the question of enforceability under governing law. It appears that the policy was issued in Tennessee by a Tennessee agent of the company while Ms. Partridge was a resident of that state. But shortly thereafter, she moved to her mother's Mississippi home and failed to notify the company of this change until nearly two years later, many months after Baites' accident. During this interim period Partridge purposefully continued to represent herself as a Tennessee resident to State Farm as well as nearly every other company she conducted business with, including her health insurer, Blue Cross-Blue Shield of Tennessee, and numerous credit card companies. Moreover, she declared a Memphis post office box as *322 her address on several employment applications and continued to purchase Tennessee license plates for her vehicle. According to her deposition, the point of this was to enhance her chances of gaining employment as a teacher in the Shelby County, Tennessee school district, which has a local residency requirement. It appears that she genuinely intended to return to Tennessee if and when one of these highly sought-after positions became available, but believed that in the meantime the school district might favor a candidate already residing in the area.
¶ 4. After examining these facts, the circuit court found that Tennessee indeed had the most significant contacts with the insurance policy for choice of law purposes and held that state's law to be controlling. Since the application of those rules, as opposed to Mississippi's, undeniably precludes Baites' claim, she asks this Court to review the decision.

ANALYSIS

I. DID THE TRIAL COURT ERR IN APPLYING THE LAW OF TENNESSEE INSTEAD OF THE LAW OF MISSISSIPPI IN DETERMINING THAT THERE WAS NO UNINSURED MOTORIST COVERAGE AVAILABLE UNDER THE POLICY OF INSURANCE ISSUED BY STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY?
¶ 5. In evaluating Baites' query, we find direction in Boardman v. United Services Automobile Association, 470 So.2d 1024 (Miss.1985) and O'Rourke v. Colonial Insurance Company of California, 624 So.2d 84 (Miss.1993), two Mississippi Supreme Court opinions outlining the choice of law principles to be considered in instances such as this. As those cases explain, in 1968 the court adopted the "center of gravity" test as it is known for application in this area of the law. Boardman, 470 So.2d at 1031; O'Rourke, 624 So.2d at 86 (citing Mitchell v. Craft, 211 So.2d 509, 512 (Miss.1968); Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 649 (Miss.1968)). Consequently, where a question is presented as to whether a substantive rule of law should be our own or that of another state, we must determine which state has the most substantial contacts with the parties and the subject matter of the action. O'Rourke, 624 So.2d at 86. The Boardman and O'Rourke opinions both deal with the relevancy and proper application of these principles in the context of non-resident attempts to procure the benefit of Mississippi's laws regarding uninsured motorist coverage. O'Rourke, 624 So.2d at 85-6. In each instance the policy claimant, while temporarily within our borders, incurred injuries as the result of an automobile accident occurring with an uninsured Mississippian. Thereafter the claimant disputed the applicability of a so-called "owned vehicle exclusion clause," designed to prevent the stacking of policies. Id. And in each case, our supreme court found that the center of gravity favored the state of origin. Boardman, 470 So.2d at 1034; O'Rourke, 624 So.2d at 86. In doing so the court applied §§ 6 and 188 of the Restatement (Second) of Conflicts of Law (1971). Boardman, 470 So.2d at 1031, 1034; O'Rourke, 624 So.2d at 86 (citing Mitchell, 211 So.2d at 512).
¶ 6. Section 6 of the Restatement enumerates a number of factors relevant to a choice of law determination which include: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of results; and (7) ease and determination in application of law to be applied. Id. (citing Mitchell, 211 So.2d at 516; Spragins v. Louise Plantation, Inc., 391 So.2d 97, 100 (Miss.1980)).
*323 ¶ 7. Section 188 narrows the focus of § 6 by setting forth certain principles to be applied in making choice of law determinations in contract actions. Boardman, 470 So.2d at 1032 (citing § 188, Restatement (Second) of Conflicts of Law). Section 188 reads in pertinent part:
(2) In the absence of an effective choice of law by the parties (see § 187), the contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
Id. In addressing the coverage questions presented inBoardman and O'Rourke, the Mississippi Supreme Court sorted through a mass of material to find these details and finally adhered to the only reasonable expectation the parties could have hadthat the protection offered by the respective policies would be determined by reference to the laws of the state in which they had been effected. Boardman, 470 So.2d at 1034; O'Rourke, 624 So.2d at 86.
¶ 8. We begin with the threshold observation that the factual parallels between those cases and the one at hand are such as to suggest the appropriateness of a similar holding here. We must acknowledge, however, certain distinguishable features which complicate our inquiry to some degree. First, the insured vehicle was housed and driven principally within this State for some months prior to Baites' accident, presumably while the premiums were being mailed from the same address. For the significance of these distinctions we look to Restatement § 193, concerning Contracts of Fire, Surety, or Casualty Insurance, as adopted in the Boardman opinion:
The validity of a contract of fire, surety of casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy....
Boardman, 470 So.2d at 1033 (citing § 193 Restatement (Second) of Conflicts of Law) (emphasis added). As should be immediately apparent, the central thrust of Restatement § 193 is that the law applicable in actions on insurance contracts, other than those providing life insurance, should be the law of the state the parties envisioned to be the principal location of the risk at the time of contracting. Id.(citing Restatement (Second) of Conflicts of Laws § 193 comment b). However, another comment to the Restatement notes:
There may also be occasions when following the issuance of the policy the principal location of the risk is shifted to some other state. In such a situation, this other state will have a natural interest in the insurance of the risk [and] application of the local law of the other state would hardly be unfair to the insurance company, at least with respect to some issues, if the company had reason to foresee when it issued the policy that these might be a shift to another state of the principal location of the risk.

Id. (citing § 193 Restatement (Second) of Conflicts of Law § 193 comment d) (emphasis added). The specific risk at issue here was that Ms. Partridge or some other "insured" under the policy might become involved in an automobile accident with a negligent uninsured motorist. The principal location of that risk was undeniably Mississippi during the months preceding her mother's accident. From this point of view, it seems that Mississippi law should serve as the basis of a decision regarding liability. However, thanks to Ms. Partridge's active deception, State Farm had *324 no knowledge of these facts and its reasonable expectations could not be met. These expectations are the fundamental question at issue, and since they involve entitlement to insurance benefits as opposed to the scope of risk, Mississippi law would not be favored. See Boardman, 470 So.2d at 1034; O'Rourke, 624 So.2d at 86 (characterizing coverage, rather than principal location of risk or stacking-related questions, as outcome-determinative issue).
¶ 9. Second, we must proceed beyond the discussion in the Boardman and O'Rourke cases since Baites goes further by suggesting that her daughter had actually become a resident of Mississippi. See Boardman, 470 So.2d at 1035, 1039 (indicating in dicta, without explanation, that such an assertion could alter analysis). Since the concept of residence is highly flexible and turns on considerations such as "the degree of one's attachment to a particular abode," we can only hold that Ms. Partridge qualifies. Aetna Casualty and Surety Company v. Williams, 623 So.2d 1005, 1010 (Miss.1993). However, the significance of this determination, despite the extensive wrangling between these parties, is minimal.
¶ 10. Any effect her residency might have on our decision is offset, once again, by the fact that Ms. Partridge (1) made countless formal and informal declarations during the relevant time period that Tennessee remained her home, and (2) indicated in her deposition that she maintained the intent to return to that state if and when a desirable teaching position became available to her. These facts clearly indicate that, whatever her housing situation, she never abandoned Tennessee as her domicile. See Newman v. Newman, 558 So.2d 821, 825 (Miss.1990) (noting presumption that once established, domicile continues until new one is chosen). See also, Stubbs v. Stubbs, 211 So.2d 821, 825 (Miss.1968) (citing formal declarations as best evidence of intent in this context). To the extent Boardman and O'Rourke give importance to residency as a factor, we would view it as a desire to protect Mississippi citizens, as opposed to those only temporarily within our borders. In light of Ms. Partridge's status, the aforementioned principles are best served by affirming the trial court's application of Tennessee law. See Boardman, 470 So.2d at 1033, 1039 (stating that "citizenship" of plaintiff strengthened ties to sister state despite his short term residence in Mississippi).
¶ 11. In addition, Baites reminds us that the Mississippi Supreme Court ordinarily takes a dim view of insurer efforts to exclude cases and persons from coverage of the uninsured motorist provisions of an automobile insurance policy. O'Rourke, 624 So.2d at 88. In that vein she argues that we should not apply the law of Tennessee since to do so would be contrary to the public policy of this State. Though Ms. Partridge's occupancy of her mother's home in Mississippi perhaps presents a closer case than eitherBoardman or O'Rourke, we nevertheless must follow the principles of these cases. Consequently, we continue to hold that public policy in this area, manifest through our uninsured motorist statute, is not strong enough to override the reasonable expectation of contracting parties that coverage questions will be governed by the law of the state where the insurance contract is made. Id. at 89. In this case, the governing law should be the law of Tennessee. See Boardman, 470 So.2d at 1039. This assignment of error is therefore without merit.
¶ 12. THE JUDGMENT OF THE DeSOTO COUNTY CIRCUIT COURT IS AFFIRMED. ALL APPEAL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN and THOMAS, P.JJ., and COLEMAN, HERRING, PAYNE and SOUTHWICK, JJ., concur.
*325 DIAZ, J., dissents with separate written opinion joined by BRIDGES, C.J., and KING, J.
DIAZ, J., dissenting:
¶ 13. I respectfully dissent from the majority opinion. Summary judgment is a powerful tool which "should be used wisely and sparingly." Martin v. Simmons, 571 So.2d 254, 258 (Miss.1990). It should only be granted when "there is no genuine issue as to any material fact." M.R.C.P. 56(c).
¶ 14. The majority opinion cites five factors to be considered in determining choice of law questions. See Boardman v. United Servs. Auto. Ass'n, 470 So.2d 1024, 1032 (Miss.1985); O'Rourke v. Colonial Ins. Co. of Cal., 624 So.2d 84, 86 (Miss.1993). Due to Partridge's relocation to Mississippi, three of these factorsthe place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the partiescould be interpreted as favoring Mississippi as the appropriate choice of law in the present case. The trial judge failed to consider that perhaps a legitimate issue of fact existed as to whether Mississippi or Tennessee law applied in the case at bar. It is for this reason that "[w]e urge caution in the granting of summary judgment." Martin, 571 So.2d at 258. I would, therefore, reverse the trial court's summary judgment order for a factual determination of whether the substantive law of Mississippi or Tennessee should govern the outcome of this case.
BRIDGES, C.J., and KING, J., join this separate opinion.