# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00594-SCT

*HARTFORD INSURANCE COMPANY*

*v.*

*ERNEST SHEFFIELD AND PERMANENT GENERAL ASSURANCE CORP., GARNISHEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/1999 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DION JEFFERY SHANLEY |
| | H. SCOT SPRAGINS |
| ATTORNEY FOR APPELLEE: | MELANIE M. STEWART |
| | RICHARD W. WACKERFUSS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED-10/31/2001 |
| MOTION FOR REHEARING FILED: | 11/13/2001; denied 3/7/2002 |
| MANDATE ISSUED: | 3/14/2002 |

### EN BANC.

### SMITH, JUSTICE, FOR THE COURT:

¶1. On February 8, 1991, Archie B. McDaniel ("McDaniel") filed a complaint against Earnest Sheffield ("Sheffield") in the Circuit Court of Marshall County, Mississippi. The case involved a collision between a tractor driven by McDaniel and a truck driven by Sheffield. Permanent General Assurance Corporation ("PGA") insured the truck driven by Sheffield, and McDaniel was insured by Hartford Underwriters Insurance Company ("Hartford").

¶2. Circuit Court Judge Henry Lackey entered a default judgment against Sheffield in the amount of $75,000 on March 9, 1993. The court issued a writ of garnishment against PGA for the amount of the judgment plus interest and costs. PGA answered the writ of garnishment denying it was indebted to Sheffield.

¶3. On September 9, 1994, McDaniel filed a Motion to Consolidate the action against Sheffield with that against Hartford, also filed in the Circuit Court of Marshall County.[1] Hartford paid McDaniel $20,000 in uninsured motorist benefits on January 31, 1995, and McDaniel executed an absolute release and assignment of third party claims to Hartford. Hartford took over the suit against Sheffield as McDaniel's subrogee on September 15, 1995.

¶4. On June 14, 1999, the circuit court granted PGA's Motion for Order to Quash Writ of Garnishment and/or for Summary Judgment. The court found that Sheffield failed to cooperate with the PGA in the defense of the action against him and that Sheffield's lack of cooperation nullified any obligation of PGA to pay damages owed by Sheffield to McDaniel.

¶5. Hartford timely filed its notice of appeal with this Court on July 7, 1999.

## FACTS

¶6. The accident between McDaniel and Sheffield occurred on March 22, 1990. The details of the accident are not pertinent to the issues before us, save to note that at the time of the accident, Sheffield was driving a truck owned by Dennis Morgan ("Morgan"), the named insured under the policy with PGA. The policy issued by PGA was a Tennessee policy, effective November 30, 1989. The policy was cancelled on July 7, 1990, for non-payment of premiums.

¶7. McDaniel initiated his action against Sheffield on February 8, 1991. Sheffield was served by secondary process received by his wife on February 14, 1991, and a copy of the complaint was mailed to Sheffield the following day. Sheffield never answered the complaint.

¶8. The section of the PGA policy titled "Duties After an Accident or Loss" requires that a person seeking coverage must cooperate and promptly send copies of any notices of legal papers received in connection with the accident or loss. Though Morgan was aware of the accident, neither Morgan nor Sheffield contacted PGA to report the accident. Sheffield did not tell Morgan about the lawsuit. PGA received neither notice of the accident nor notice of a potential claim until it received a letter and copy of the complaint from McDaniel's attorney on February 7, 1991, nearly one year after the accident.

¶9. PGA attempted to contact Morgan on February 13, 1991, by certified mail; March 13, 1991, by first class mail; and May 14, 1991, by certified mail and by first class mail. Morgan finally contacted PGA on June 18, 1991. Upon receipt of a copy of the accident report containing Sheffield's address from McDaniel's attorney on December 13, 1991, PGA wrote Sheffield on December 16, 1991, advising him that it was reserving rights of coverage under its policy with Morgan due to lack of permission to operate Morgan's vehicle, failure to promptly report the loss, failure to promptly furnish suit papers or other legal documents, and failure to cooperate. PGA also requested that Sheffield contact them. Sheffield never contacted PGA. On January 14, 1992, PGA advised Sheffield via certified mail that since Sheffield had not contacted PGA, PGA was denying coverage under Morgan's policy. McDaniel's attorney was also advised by letter dated January 14, 1992.

¶10. Default judgment was entered against Sheffield for failure to appear on March 9, 1993. The circuit court ultimately granted PGA's Motion to Quash Writ of Garnishment and/or Summary Judgment, finding that Sheffield's lack of cooperation with PGA in the defense of the action against him nullified any obligation of PGA to pay damages owed by Sheffield to McDaniel. Aggrieved, Hartford argues that the circuit court erred in granting PGA's motion, raising specifically the following issues:

> **I. THE PROVISION RELIED UPON BY PGA IS NOT A CONDITION PRECEDENT TO RECOVERY.**

> **II. A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER MCDANIEL OR MORGAN TIMELY COMPLIED WITH THE REQUIREMENTS OF THE PGA POLICY.**

> **III. PGA MUST DEMONSTRATE PREJUDICE IN ORDER TO DENY COVERAGE UNDER THE POLICY.**

> **IV. A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER SHEFFIELD WAS A**

**PERMISSIVE USER.**

**V. A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER PGA HAS WAIVED THE NOTICE REQUIREMENTS OR IS OTHERWISE ESTOPPED TO DENY COVERAGE.**

## STANDARD OF REVIEW

¶11. A lower court's decision to grant summary judgment is reviewed de novo. ***Hernandez v. Vickery Chevrolet-Oldsmobile Co.***, 652 So. 2d 179, 181 (Miss. 1995). Entry of summary judgment is appropriate when there exists no genuine issue of material fact that can be found and the moving party is entitled to judgment as a matter of law. ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 362 (Miss. 1983). The burden of demonstrating that no genuine issue of fact exists is on the moving party, viewing all evidence in the light most favorable to the non-moving party. ***Cook v. Children's Med. Group, P.A.***, 756 So. 2d 734, 739 (Miss. 1999).

## LEGAL ANALYSIS

¶12. As a preliminary matter, this Court must determine whether the substantive rule of law here applied should be that of our own state or that of Tennessee. Though the accident between McDaniel and Sheffield occurred in Mississippi, we find that the proper choice of law governing the policy at issue is that of Tennessee.

¶13. Where a question is presented as to whether the substantive rule of law should be our own or that of another state, we must determine which state has the most substantial contacts with the parties and the subject matter of the action. ***O'Rourke v. Colonial Ins. Co.***, 624 So. 2d 84, 86 (Miss.1993) (applying the "center of gravity" test in the context of non-resident attempts to procure the benefit of Mississippi's laws regarding uninsured motorist coverage). In addressing the coverage questions in ***O'Rourke***, this Court adhered to the only reasonable expectation the parties could have had -- that the protection offered by the policy would be determined by reference to the laws of the state in which they had been effected. ***Id.*** at 86.

¶14. A recent Court of Appeals opinion, ***Baites v. State Farm Mut. Auto. Ins. Co.***, 733 So.2d 320, 321 (Miss. Ct. App. 1998), properly dealt with the application of the principles stated in ***O'Rourke*** to facts similar to those of the instant case. The policy in ***Baites*** was a Tennessee policy issued in Tennessee to a person claimed to be a resident of Tennessee. The fact that the accident occurred in Mississippi, and that the person turned out to actually live in Mississippi, did not change the determination that Tennessee law applied. The court held that the governing law should be the law of Tennessee. ***Id.*** at 324.

¶15. In the case sub judice, the insurance policy was a Tennessee policy issued by a Tennessee insurance agent. Morgan was a Tennessee resident. The fact that the accident occurred in Mississippi does not affect our choice of law determination. This Court finds that in the case sub judice, the controlling law governing the insurance policy is Tennessee law. *See also **Nationwide Mut. Ins. Co. v. Tillman***, 249 Miss. 141, 161 So. 2d 604, 613 (1964) (New York law controlled construction of automobile liability policy which was executed in New York although the accident happened in Mississippi).

**I. THE PROVISION RELIED UPON BY PGA IS NOT A CONDITION PRECEDENT TO RECOVERY.**

**II. A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER MCDANIEL OR**

**MORGAN TIMELY COMPLIED WITH THE REQUIREMENTS OF THE PGA POLICY.**

¶16. The first two issues raised by Hartford will be considered together. Hartford asserts that the policy provision relied upon by PGA is not a condition precedent to recovery under the policy and that a genuine issue of fact exists regarding compliance with the provision. The portion of the policy relied upon by PGA states:

**PART E -- DUTIES AFTER AN ACCIDENT OR LOSS**

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witness.

B. A person seeking any cover must:

1. Cooperate with us in the investigation, settlement or defense of said claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

a. to physical exams by physicians we select. We will pay for these exams.

b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

a. medical reports, and

b. other pertinent records

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit and run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

**¶17. Under Tennessee law, policies requiring "prompt" notice have generally been interpreted to mean that notice must be given within a reasonable time under the circumstances surrounding the case.** *Allstate Ins. Co. v. Wilson*, **856 S.W.2d 706, 709 (Tenn. Ct. App. 1992). The Supreme Court**

of Tennessee has stated:

> A condition in an insurance policy which requires the insured to give notice of an occurrence "as soon as practicable" imposes a duty on the insured to give notice when he becomes, or should become, aware of facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer.

*Reliance Ins. Co. v. Athena Cablevision Corp.*, 560 S.W.2d 617, 618 (Tenn. 1977). In *Reliance*, the Tennessee Supreme Court also observed:

> The time words in the clause, "as soon as practicable" are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in their nature ambulatory and subject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed. They do not even provide for notice "as soon as possible." In terms, they require notice "as soon as practicable" and they must not be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and purposes of the notice clause.

*Id*. at 618 (quoting *Transamerica Ins. Co. v. Parrott*, 531 S.W.2d 306, 312-13 (Tenn. Ct. App. 1975); *Young v. Travelers Ins. Co.*, 119 F.2d 877 (5th Cir. 1941)).

¶18. In the case sub judice, the record indicates that PGA had no knowledge of either the lawsuit against Sheffield or even the collision between Sheffield and McDaniel until McDaniel's attorney mailed a copy of the complaint to PGA on February 7, 1991. This was nearly one year after the date of the accident. PGA made multiple attempts by mail to contact Morgan and Sheffield. PGA attempted to contact Morgan on February 13, 1991, by certified mail; March 13, 1991, by first class mail; and May 14, 1991, by certified mail and by first class mail. Morgan finally contacted PGA on June 18, 1991.

¶19. Upon receipt of a copy of the accident report containing Sheffield's address from McDaniel's attorney on December 13, 1991, PGA wrote Sheffield on December 16, 1991, advising him that it was reserving rights of coverage under its policy of insurance with Morgan due to lack of permission to operate Morgan's vehicle, failure to promptly report the loss, failure to promptly furnish suit papers or other legal documents, and lack of cooperation. PGA also requested that Sheffield contact them. Sheffield never responded. On January 14, 1992, PGA advised Sheffield via certified mail that since Sheffield had not contacted PGA, PGA was denying coverage under Morgan's policy.

¶20. Hartford argues that an issue of fact exists as to whether McDaniel or Morgan timely complied with the notice requirements of the policy. Even assuming the notification of the collision and lawsuit by McDaniel's attorney were sufficient notice under the terms of the policy, this notification occurred nearly a year after the accident in question. Morgan waited four more months before contacting PGA, and Sheffield made absolutely no effort to communicate with PGA nor to cooperate with PGA. The circuit court granted summary judgment in favor of PGA on the grounds that Sheffield failed to cooperate with PGA. Even assuming an issue of fact exists as to

whether the notification was sufficient, there is clearly no such issue regarding Sheffield's failure to cooperate. Summary judgment was properly granted as to this issue.

¶21. Additionally, Hartford points out that Part E of the policy does not state that failure to comply with its requirements will result in forfeiture of coverage under the policy. Thus, insists Hartford, compliance with the notice and cooperation requirement is not a condition precedent to coverage under the policy.

¶22. Hartford's argument is not persuasive. A condition precedent is "a condition which must be fulfilled [by one party] before the duty [of the other party] to perform an existing contract arises." *Federal Deposit Ins. Corp. v. Newton*, 737 S.W.2d 278, 282 (Tenn. Ct. App. 1987) (quoting 13 C.J. *Contracts* § 532, at 564-65 (1917)). The Tennessee Supreme Court stated in *Reliance* that failure to give prompt notice of the occurrence upon which liability is asserted will release the insurer from liability where there is no reason for the delay. *Reliance*, 560 S.W.2d at 619 (citations omitted). Furthermore, in *Tennessee Farmers Mut. Ins. Co. v. Nee*, 643 S.W.2d 673 (Tenn. Ct. App. 1982), the court stated that notice provisions of an insurance policy are valid conditions precedent to coverage even where the policy does not contain a forfeiture provision. *Id.* at 675 (citing *Phoenix Cotton Oil Co. v. Royal Indem. Co.*, 205 S.W. 128 (Tenn. 1918); *Osborne v. Hartford Acc. & Indem. Co.*, 476 S.W.2d 256 (Tenn. Ct. App.1971); *Barfield v. Insurance Co. of N. Am.*, 443 S.W.2d 482 (Tenn. Ct. App.1968)).

¶23. We find that PGA, pursuant to the express language of its policy, has properly asserted Sheffield's failure to comply with the notice and cooperation provisions as a defense to coverage of the accident in question. Further, we find that there exists no question of fact as to Sheffield's failure comply with these provisions. These assignments of error are without merit.

### III. PGA MUST DEMONSTRATE PREJUDICE IN ORDER TO DENY COVERAGE UNDER THE POLICY.

¶24. Hartford argues that once it has been determined that PGA did not receive timely notice under the terms of the policy, PGA must demonstrate that it has been prejudiced by the lack of notice. Hartford argues that the circuit court erred in granting PGA's Motion for Summary Judgment because PGA presented no proof that would allow an inference of prejudice to PGA as a result of the delay. Hartford relies solely on Mississippi law for this assertion. As stated previously, the governing law in this action is that of Tennessee. Tennessee law regarding proof of prejudice has undergone recent changes. Prior Tennessee law, as stated in *Phoenix Cotton Oil Co. v. Royal Indemnity Co.*, 205 S.W.128 (Tenn. 1918), and *Hartford Acc. & Indem. Co. v. Creasy*, 530 S.W.2d 778 (Tenn. 1975), required no showing of prejudice by the insurer. *Hartford* at 779; *Phoenix Cotton* at 130.

¶25. This requirement changed with *Alcazar v. Hayes*, 982 S.W.2d. 845 (Tenn. 1998), in which the Tennessee Supreme Court reversed the approach established in *Phoenix Cotton* and *Creasy* in order to closer align itself with the modern trend approach adopted by the overwhelming number of Tennessee's sister states. *Alcazar*, 982 S. W. 2d at 851-52. The *Alcazar* Court adopted the rebuttable presumption rule. *Id*. at 856. According to this rule, once it is determined that the insured failed to provide timely notice in accordance with the policy, it is presumed that the insurer has been prejudiced by the breach. *Id.* The insured, however, may rebut this presumption

by offering competent evidence that the insurer was not prejudiced by the delay. *Id.* The Court in *Alcazar* expressly stated that the rebuttable presumption rule would apply to all cases tried or retried after the date of the opinion and to all cases pending on appeal in which the prejudice issue was raised in the trial court. *Id*.

¶26. The rule announced in *Alcazar* was applied in the context of an uninsured motorist policy. The rule was not applied to a liability policy until March 27, 2000, when the court decided *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811 (Tenn. 2000). Summary judgment in the case at hand was granted subsequent to the court's decision in *Alcazar* and prior to the court's decision in *American Justice*. Nevertheless, it is clear that the rebuttable presumption announced in *Alcazar* should apply to the case at hand.

¶27. We noted in *Presley v. Mississippi Highway Comm'n*, 608 So. 2d 1288, 1299 (Miss. 1992), the common law doctrine that judicial decisions apply retroactively unless designated as prospective. Upon review of Tennessee law, the Tennessee Supreme Court has repeatedly held that decisions in civil cases apply retroactively. *Hill v. City of Germantown*, 31 S.W.3d 234 (Tenn. 2000); *Broadwell v. Holmes*, 871 S.W.2d 471 (Tenn. 1994); *Dupuis v. Hand*, 814 S.W.2d 340 (Tenn. 1991); *Davis v. Davis*, 657 S.W.2d 753 (Tenn. 1983). Therefore, the rebuttable presumption rule, as applied in *American Justice*, similarly applies in the case at bar.

¶28. Furthermore, the inquiry before this Court, in seeking to apply Tennessee law, does not stop with the determination of whether Tennessee, at the time the case sub judice was decided, had applied the rebuttable presumption rule to the precise policy as exists in the case at hand, but whether, faced with the policy in the case at hand, the Tennessee court would apply the rebuttable presumption rule. Based on the reasoning of the court in *Alcazar*, the answer is yes, as evidenced by the fact that the court so decided in *American Justice*.

¶29. The rationales expressed by the *Alcazar* court for adopting the view that prejudice to an insurer should be required as a prerequisite to forfeiture of a policy based on failure to give timely notice apply to liability policies to the same degree as to uninsured motorist policies. Furthermore, many of the cases cited in *Alcazar* in support of the decision to adopt the rebuttable presumption model involved a failure to give notice under a liability insurance policy. *See Tiedtke v. Fidelity & Cas. Co.*, 222 So. 2d 206 (Fla. 1969); *Miller v. Dilts*, 463 N.E.2d 257 (Ind. 1984); *Fillhart v. Western Res. Mut. Ins. Co.*, 684 N.E.2d 1301 (Ohio Ct. App. 1996); *Gerrard Realty Corp. v. American States Ins. Co.*, 277 N.W.2d 863 (Wis. 1979). As the Tennessee court stated in *American Justice*, "nothing in the *Alcazar* holding indicates that the modern trend is limited to uninsured / underinsured motorist policies." *American Justice*, 15 S.W.3d at 817.

¶30. Hartford argues, in its brief to this Court, that PGA's defense of the action against Sheffield could not have been prejudiced by the delay as Sheffield has never disputed the fact that he was speeding at the time of the accident and that he was under the influence of alcohol. The circuit court's order granting summary judgment makes no finding regarding the existence of prejudice. It is impossible to determine whether the question of prejudice arose at the hearing on PGA's motion for summary judgment because no transcript from that hearing is included in the record before this Court, despite Hartford's designation of that transcript as part of the record on appeal. The judgment of the trial court is therefore reversed, and this case remanded for a

determination of whether there was offered evidence to rebut the presumption of prejudice which arose upon PGA's showing that it did not receive timely notice.

### IV. A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER SHEFFIELD WAS A PERMISSIVE USER

¶31. Hartford argues that an issue of fact exists as to whether Sheffield was a permissive user of Morgan's truck at the time of the accident. The record indicates that Morgan informed PGA that Sheffield did not have permission to use the truck, while Sheffield stated he had permission from Morgan to use the truck. PGA made no argument regarding lack of permission in its memorandum in support of its motion for summary judgment. The only argument made in the memorandum is that regarding Sheffield's failure to give timely notice to PGA and to cooperate with PGA in defending the claim, and the only finding in the circuit court's order granting summary judgment is that regarding Sheffield's failure to cooperate.

¶32. This argument is without merit. Summary judgment was clearly granted on the basis that Sheffield failed to cooperate and the lack of cooperation nullified any obligation of PGA to provide coverage for the accident. Whether there exists an issue of fact as to permissive use was not a question brought before the circuit court by PGA's motion for summary judgment, and it is, therefore, not a question which may be considered for the first time by this Court on appeal. *Fondren North Renaissance v. Mayor of City of Jackson*, 749 So. 2d 974, 980 (Miss.1999)). Furthermore, if on remand the circuit court finds that Sheffield failed to offer evidence to rebut the presumption of prejudice, summary judgment is appropriate regardless of the existence of an issue of fact as to permissive use because the failure to cooperate is, in and of itself, grounds for forfeiture of coverage under the policy.

### V. A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER PGA HAS WAIVED THE NOTICE REQUIREMENTS OR IS OTHERWISE ESTOPPED TO DENY COVERAGE.

¶33. Hartford argues that PGA never attempted to preserve its rights concerning Sheffield's failure to provide notice and cooperation and that PGA has, therefore, waived its right to rely on the notice and cooperation requirement as a condition precedent to providing coverage. Hartford relies on *Monarch Ins. Co. v. Cook*, 336 So.2d 738, 740 (Miss. 1976), in which this Court stated that where an insurer carrier denies coverage, it is estopped from enforcing notice requirements within the policy as conditions precedent to coverage. *Monarch* is distinguishable from the case sub judice.

¶34. In *Monarch*, the insured made various attempts to have the insurer cover the loss. *Id*. Although the insured was told in various communications that there was a question as to coverage, the insured was never definitely told whether the coverage was allowed. *Id*. The court found these communications constituted actual and repeated notice to the insurer of the occurrence, the claim, and the suit against the insured. The accident in *Monarch* occurred on or about January 16, 1973, and first notice of loss was transmitted by the insured on or about January 28, 1973. The Court found that by denying coverage after actual notice provided by the insured seeking coverage, the insurer waived any right to insist that the insured give further notice of the filing of the suit. *Id*.

¶35. In the case sub judice, almost a year passed before PGA had any knowledge of the claim or legal proceedings. Sheffield did not notify PGA of the loss and wholeheartedly failed cooperate in his defense. Hartford argues that PGA failed to reserve its rights. On December 16, 1991, PGA wrote Sheffield advising him that it was reserving rights of coverage due to his failure to promptly report the loss, failure to promptly furnish suit papers or other legal documents, failure to cooperate, and lack of permission to operate Morgan's vehicle. This letter also advised Sheffield to contact PGA. By letter dated January 14, 1992, PGA stated it was denying coverage due to Sheffield's failure to contact PGA.

¶36. PGA clearly reserved its rights under the policy. This Court finds that this issue is without merit.

## CONCLUSION

¶37. The circuit court correctly concluded that no issue of fact exists as to whether Sheffield failed to cooperate with PGA and that, under the terms of the policy, this lack of cooperation nullifies any obligation of PGA to provide coverage for the accident in question. However, Tennessee law also requires that PGA be prejudiced by Sheffield's failure to give timely notice in order to deny coverage pursuant to the policy provision at issue in this case. *See Alcazar*, 982 S. W. 2d at 851-52. Upon PGA's showing of untimely notice, such prejudice is presumed, and Hartford may offer evidence to rebut this presumption. *Hartford*. Because the court below made no finding regarding prejudice to PGA and because the transcript from the summary judgment hearing is not before this Court for review as requested by Hartford, the judgment of the circuit court is reversed and this case remanded for a determination of whether there was offered evidence to rebut the presumption of prejudice to PGA.

¶38. REVERSED AND REMANDED.

> PITTMAN, C.J., BANKS, P.J., MILLS, WALLER AND COBB, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. McRAE, P.J, JOINS IN PART.

> EASLEY, JUSTICE, DISSENTING:

¶39. In my opinion, the majority properly determines that the controlling law governing the insurance policy is that of Tennessee. The accident's occurrence in Mississippi is not our sole consideration. As cited by the majority, the Court of Appeals, in *Baites*, stated that when presented with a question of law, the court must determine which state has the most substantial contacts with the parties and the subject matter of the action. 733 So.2d at 321. The majority also correctly finds that Sheffield's failure to cooperate or provide any notice is clear. Prompt notice was not provided within a reasonable time under the circumstances surrounding the case. *See Allstate Ins. Co.*, 856 S.W.2d at 709; *Reliance*, 560 S.W.2d at 618.

¶40. However, I believe that the majority reaches an incorrect outcome. Therefore, I respectfully dissent. The majority's view is that proof of prejudice was required by Hartford in asserting lack of notice as a defense under Tennessee law as a condition precedent to coverage. The law in Tennessee as to proof of prejudice has undergone changes recently. The line of theory that had

been followed was stated in *Hartford*, 530 S.W.2d at 778. The court in *Hartford*, stated that "[n]otice is a vital and indispensable condition precedent to recovery under the policy." *Id*. at 779. In *Phoenix Cotton*, the court stated the general proposition that "(1) notice is a condition precedent to recovery under the policy and (2) there need not be any showing of prejudice." 205 S.W. at 130. The court in *Hartford*, addressed the ability of the insured to give notice as being the key determination. 530 S.W.2d at 780. The court stated that "[t]he burden of offering an explanation or excuse for failure to give notice must rest heavily upon the insured since he seeks relief from the plain terms of a contract of insurance coverage." *Id*.

¶41. The law in Tennessee as to the showing of prejudice by the insurer changed with the 1998 decision in *Alcazar*, which reluctantly overturned the approach established in *Phoenix Cotton* and *Hartford*, to come more in line with the modern trend adopted by the overwhelming number of Tennessee's sister states. 982 S.W.2d at 851-52. The standard was applied to (1) all cases tried or retried after the date of the opinion, and (2) all cases pending on appeal in which the prejudice issue was raised in the trial court." *Id* at 856.

¶42. The court in *Alcazar*, only addressed the approach in the context of uninsured/underinsured motorist policy. *Id*. The court, in a later decision reached in 2000, applied the rational of *Alcazar* to liability insurance policies to the same degree as to the uninsured motorist policies. *American Justice*, 15 S.W.3d at 816-17. The court in *American Justice* stated that "[b]oth types of insurance policies are contracts of adhesion in that they are 'form contracts drafted by the insurer and the insured has little, if any, bargaining power.'" *Id*. at 817. Forfeiture without any prejudice to the insurer would result in a windfall to the insurer under both types of policies. *Id*.

¶43. Here the summary judgment hearing was not until February 22, 1999, and decided June 14, 1999. *Alcazar* had already been decided by the Tennessee courts establishing prejudice to be shown in uninsured/underinsured motorists context on December 21, 1998. However, the court did not address the application of the rationale in *Alcazar* to standard liability policies until sometime later in *American Justice* decided in 2000. For the foregoing reasons, I believe requiring proof of prejudice to be shown by the insurer was not required to deny coverage based on the law as it existed in 1999. Therefore, I respectfully dissent.

DIAZ, J. JOINS THIS OPINION. McRAE, P.J., JOINS IN PART.

1. McDaniel filed a complaint against Hartford on March 10, 1993, in which he asserted that if Sheffield was an uninsured motorist at the time of the collision, Hartford owed McDaniel uninsured motorist benefits.