IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2008  Session

# TOM SPEARS, ET AL. V. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal from the Circuit Court for Trousdale County**
**No. 3819-P-140     John D. Wooten, Judge**

**No. M2008-00842-COA-R3-CV - Filed July 17, 2009**

Owners of an insured vehicle that was damaged by fire filed suit against their insurance company for breach of contract, failure to pay insurance claim in good faith, and violations of the Tennessee Consumer Protection Act.  Insurer filed a counter-complaint alleging that one of the insureds had no right of recovery under the policy because she had no insurable interest in the vehicle and that the other insured was barred from seeking recovery under the policy because the insured failed to answer questions under oath when asked by the insurer.  The trial court granted summary judgment to the insurer.  Finding no error, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ. joined.

Tim L. Bowden, Goodlettsville, Tennessee, for the appellants Tom spears and Dana Spears.

Arthur E. McClellan, Gallatin, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

**OPINION**

## I. Background

The Appellants, Mr. and Mrs. Spears, owned and insured a 2004 Chevrolet C15 Tahoe.[1]  The policy, which was effective in July 2005, was issued by the Appellee, Tennessee Farmers Mutual Insurance Company ("TFMI").  Some time during July, the Spears decided to purchase a Ford

---

[1] Only Mr. Spears' name was on the vehicle's title, but both Mr. and Mrs. Spears were named insureds under the policy.  Mrs. Spears was the primary driver of the vehicle.

Expedition and sell the Tahoe.[2] Mr. Spears inquired about the trade-in and retail values of the Tahoe, but thought he could sell it for more selling it himself. On July 30, Mr. Spears parked the vehicle near the road on their property and advertised the vehicle for sale. The Spears contend that they had the financial ability to buy the Expedition while paying for the Tahoe until it sold; however, they admit that they were behind in payments on the Tahoe at the time.[3]

On July 31, the Spears had friends over for a cook-out and one of them, Ms. Eliza Boley, expressed an interest in buying the Tahoe. Mr. Spears told her he was asking $38,000 for the Tahoe; Ms. Boley offered to pay $32,000. She drove the vehicle during the party and asked Mr. Spears if he would consider selling it for $35,000 or $36,000. Mr. Spears said he would think about it and Ms. Boley took paperwork regarding financing the vehicle home with her and said that she would discuss the matter with her husband. At the conclusion of the party, Mr. Spears moved the Tahoe back to the front of the residence; he was the last person to drive the vehicle and upon exiting the vehicle he locked it and set the alarm.[4]

The next morning, August 1, Mr. Spears walked outside of the house and noticed that the vehicle's lights were blinking. As he approached the vehicle, he noticed that the paint looked like something had been poured on it. When he reached the vehicle, he opened the door and saw that the vehicle was burned from the inside. None of the windows were broken, but a broken beer bottle was laying near it. Mr. Spears reported the incident to the police and then called his TFMI agent, Stan Hall, to file a claim for the loss. The police arrived, investigated the scene, and completed an incident report.

On August 4, Mr. Spears gave a statement to TFMI claims adjustor, Mr. Lee Amonette, at TFMI's Lafayette office. The statement was recorded, but Mr. Spears was not under oath and did not sign a transcript of his answers. Mr. Amonette referred the Spears' claim to TFMI's Special Investigations Unit because he suspected that it was "potentially fraudulent." On August 10, several TFMI agents including TFMI's investigator, Mr. Lee Brooks, a forensic chemist, Dennis Akin, and a fire cause and origin expert, Raymond Glenn Aslinger, went to the Spears' residence to investigate the fire cause and origin for TFMI. Detective David Winnett from the Trousdale Sheriff's Department met them at the Spears' residence as they took photographs and gathered evidence. Mr.

---

[2] The Spears had recently purchased a Ford Expedition because they found that it fit their needs better than the Tahoe.

[3] Mr. Spears, who was a construction contractor, explained that his income was cyclical and that he would go several months without income and then receive a lump sum payment for a project. Mr. Spears explained that this often resulted in him not making loan payments for several months, but then making several months' worth of payments in a lump sum. Mr. Spears testified that his creditors were aware of his circumstances.

[4] Mr. Spears contends on appeal that he is unsure whether he locked the vehicle and activated the alarm system when he exited the vehicle on the night of July 31, 2005; however, Mr. Spears admitted in response to TFMI's request for admissions that he did lock the vehicle and activate the alarm system. Mr. Spears also testified that he always locked the vehicle and activated the alarm system when he exited the vehicle and that he most likely did so on the night of July 31.

Akin and Mr. Aslinger provided a written report of their findings and conclusions to TFMI on August 16 and 22, respectively. Their reports concluded that the fire was intentionally set using an accelerant, gasoline, and there was no evidence of forced entry to the Tahoe. On August 26, Mr. Spears provided a recorded statement to Mr. Brooks at TFMI's Lebanon office. Mr. Brooks asked Mr. Spears questions for approximately two and a half hours, but Mr. Spears was not placed under oath nor did he sign a transcript of his answers.

On September 14, Mr. Spears filed a Sworn Statement in Proof of Loss with TFMI seeking to recover money damages under the policy in the amount of $38,900.00. Based on the recommendation of Mr. Brooks, who felt there were unresolved inconsistencies in his investigation of the Tahoe fire, TFMI's attorney, Arthur McClellan, sent Mr. and Mrs. Spears a letter on October 6, notifying them that TFMI was requesting that they answer questions under oath as provided for in their policy and that TFMI had appointed him to conduct the examination under oath ("EUO"). The EUO was scheduled for October 18 at Mr. McClellan's offices in Gallatin, Tennessee. The letter asked the Spears to bring several documents with them and informed them that "the examination would cover all of the circumstances concerning the claim you have made as to the fire loss to your vehicle on July 31, 2005." The letter also informed the Spears that they could have an attorney present, but that the attorney would not be allowed to participate.

On October 18, Mr. and Mrs. Spears went to Mr. McClellan's office and brought most of the requested documents, but only Mrs. Spears answered questions under oath and the examination was cut short because the Spears had another appointment to go to. During the examination of Mrs. Spears, she became upset,[5] but resumed answering questions after regaining her composure. Because Mrs. Spears' examination was incomplete, she did not sign a transcript of her answers. Mr. Spears did not answer any questions under oath on October 18. After the EUO, the Spears did not go to their other appointment, but instead went to their local TFMI agent's, Stan Hall, office. They told Mr. Hall that they felt that TFMI did not believe them and that they were asking too many personal questions that the Spears did not feel TFMI had a right to know, particularly with regard to the Spears' income; Mr. Spears said that he was considering withdrawing the claim.

On October 20, the Spears retained attorney Michael Clemons. Mr. Clemons wrote Mr. McClellan a letter on October 24 requesting "documentation and/or other proof substantiating your reasons for denial," of the Spears' claim. Mr. McClellan responded by letter on November 2, informing Mr. Clemons that TFMI had not denied the Spears' claim, but simply requested to question the Spears under oath as provided for in the policy. On November 4, Mr. Clemons responded to Mr. McClellan's letter apologizing for "any assumptions on my part that [TFMI] had

---

[5] There is a dispute as to why Mrs. Spears became upset. Mrs. Spears contends that in the middle of questioning, Mr. McClellan stopped the questioning and asked the court reporter to go off the record then told Mrs. Spears in an accusatory tone, "Don't you understand that 90% of people do this to their own vehicle?" Mr. Brooks, who was present during the EUO of Mrs. Spears, testified that Mrs. Spears became upset while discussing the recent tragedies suffered by the Spears' family including the death of both Mr. Spears' mother and sister. Mr. Brooks testified that Mr. McClellan stopped the questioning and allowed Mrs. Spears to regain her composure and to explain why such questioning was necessary.

denied my clients' claim." He expressed that the Spears, despite some reluctance, intended to cooperate in TFMI's investigation and provide the late-filed exhibits that Mr. McClellan had requested following the October 18 EUO of Mrs. Spears. On November 30, Mr. Clemons sent three of the four late-filed exhibits requested by TFMI and informed Mr. McClellan that the Spears "are ready to set up a time to for [sic] you to continue, and hopefully conclude, your investigation of their insurance claim." Mr. Clemons and Mr. McClellan attempted to find a mutually convenient date to complete Mrs. Spears' EUO and conduct Mr. Spears' EUO in December 2005, but ultimately scheduled the EUO for January 31, 2006. On January 14, Mr. Clemons confirmed by letter to Mr. McClellan that the Spears were available and intended to complete the EUOs on January 31.

On January 25, Mr. Clemons informed Mr. McClellan by letter that the Spears had retained another attorney, Tim Bowden, to represent them and, consequently, he was withdrawing from further representation of the Spears. On January 26, Mr. Bowden sent Mr. McClellan a letter informing him that the Spears would not participate in the previously schedule EUO on January 31 and that the Spears intended to bring legal action against TFMI for bad faith. The Spears did not attend the EUO on January 31.

On March 20, Mr. McClellan sent the Spears a letter requesting their presence at the law offices of Donoho, Taylor & Taylor in Hartsville, Tennessee on March 27, 2006, in order to complete Mrs. Spears' examination under oath and to take Mr. Spears' examination under oath pursuant to the terms of the policy. The Spears did not attend the EUO on March 27. On April 7, Mr. Brooks updated his TFMI case file with the note that since the Spears failed to attend the March 27 EUO, TFMI should seek a declaratory judgment and implead the amount of the repair estimate for the vehicle.

On April 7, 2006, the Spears filed a Complaint in the Circuit Court for Trousdale County seeking compensatory and punitive damages and attorney's fees based on allegations that TFMI had breached the contract of insurance, violated the Tennessee Consumer Protection Act, and acted in bad faith in not paying their claim under the insurance policy in violation of Tenn. Code Ann. § 56-7-105.

On June 12, TFMI filed an Answer and Counter-Complaint seeking a declaratory judgment and alleging that Mrs. Spears had failed to complete and Mr. Spears had refused to answer questions under oath when asked as required by the policy's duty to cooperate clause, which TFMI contended was a mandatory condition precedent to recovery under the policy. TFMI further alleged that Mr. Spears could not recover under the policy because there was no coverage under the policy for claims of persons whose intentional act or omission caused economic loss or property damage. Finally, TFMI alleged that Mrs. Spears had no insurable interest in the vehicle and, thus, no right to seek recovery under the policy.

On the same day, TFMI filed a motion to tender a check that had been issued on April 19, to the Clerk of the Circuit Court in the amount of $20,642.16, the estimated amount required to repair the vehicle, to be placed in an interest bearing account pending resolution of TFMI's Counter-

Complaint for Declaratory Judgment.  The trial court granted the motion to tender on August 21, 2006.

Following extensive discovery, TFMI filed a motion for summary judgment on June 4, 2007. On September 19, 2007, the trial court entered an order partially granting TFMI's motion for summary judgment by dismissing the Spears' claims of statutory "bad faith" and violations of the Tennessee Consumer Protection Act; the court reserved the other matters.  On October 13, the Spears filed a Motion for Reconsideration or Interlocutory Appeal.  On November 16, the trial court entered an order denying the Spears' motion for reconsideration, which it treated as a motion to alter or amend the September 19 order, and partially granting TFMI's motion for summary judgment by dismissing the claims of Mrs. Spears based on the conclusion that she had no right to recover monies under the policy;[6] the remaining matters were reserved pending future orders of the court or resolution of the interlocutory appeal.

On November 26, the Spears filed a notice of appeal to the Court of Appeals regarding the partial summary judgment dismissing the Spears' extra-contractual claims brought by Mr. Spears and all claims brought by Mrs. Spears.  This Court denied Mr. Spears' Tenn. R. App. P. 9 application for permission to appeal on January 9, 2008.  Dana Spears' appeal was dismissed by this Court on January 24, without prejudice to her right to appeal once a final judgment was entered following TFMI's motion to dismiss for lack of a final judgment.  On January 11, TFMI filed a motion for summary judgment seeking an order of dismissal as to Mr. Spears' breach of contract claim.

On April 3, 2008, the trial court entered a final order granting TFMI's summary judgment motion on the outstanding issue of breach of contract.  TFMI subsequently voluntarily dismissed its counter-complaints against Mr. and Mrs. Spears without prejudice.

## II.  Standard of Review

The issues were resolved in the trial court upon summary judgment.  Summary judgments do not enjoy a presumption of correctness on appeal.  *BellSouth Adver. & Publ'g Co. V. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).  This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied.  *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977).

Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law.  Tenn. R. Civ. P. 56.04; *Stoval*, 113 S.W.3d 721.  Moreover, it is proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, it is not appropriate when genuine disputes regarding material facts exist.  Tenn. R. Civ. P. 56.04.  The party seeking a summary judgment bears the burden of

---

[6]  The trial court found that because Mrs. Spears' name was not on the vehicle title or on the financing instruments that she did not have an insurable interest in the vehicle and, thus, could not seek recovery for damages to it under the policy.

-5-

demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn.2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W. 3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847, S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W. 2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 216 n.5. Regardless of the method, the moving party must do something more than merely assert that the nonmoving party has no evidence. *Byrd*, 847 S.W.2d at 215.

If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruis*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To be "material," a disputed fact must be decided in order to resolve the substantive claim or defense at which the motion is directed. *Byrd*, 847 S.W.2d at 215. If a disputed fact is material, the court must then determine whether the disputed material fact creates a genuine issue for trial. *Id.* A genuine issue exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

### III. Analysis

Even though the trial court dismissed the bad faith and consumer protection claims of Mr. Spears and all the claims of Mrs. Spears first, we will address the breach of contract claim first as it's resolution pretermits the other issues. TFMI moved for summary judgment on its counter-complaint based on the assertion that, because Mr. and Mrs. Spears breached the contract of insurance by (1) failing to answer questions under oath when asked by TFMI and (2) prematurely bringing a legal action against the insurer prior to fully complying with the terms of the contract, TFMI was not obligated to perform under the contract. In support of its motion, TFMI pointed to two provisions in the policy requiring the Spears to answer questions under oath when requested by TFMI and to fully comply with all the terms of the policy prior to bringing legal action against TFMI. TFMI also pointed to the fact that the Sworn Statement in Proof of Loss executed by Mr.

Spears provided: "The undersigned agree to be bound by all the terms of the policy, including but not limited to, the duty to cooperate in the investigation of the loss and to answer questions under oath." Finally, TFMI pointed to the fact that TFMI requested that Mr. and Mrs. Spears answer questions under oath, but that Mr. Spears never answered questions under oath and Mrs. Spears failed to complete her examination under oath and never signed her answers. By demonstrating that Mr. and Mrs. Spears failed to comply with their obligations under the policy before bringing the present action, TFMI demonstrated that its counter-complaint should be granted a matter of law. Having met its burden of production, the burden shifted to the Spears to demonstrate to the court that a material factual dispute created a genuine issue for trial.

In response to TFMI's motion, the Spears asserted that the use of the term "examination under oath" was not defined by the policy and was, thus, ambiguous and must be construed against TFMI. They also asserted that there were genuine issues of material fact as to whether the Spears cooperated with TFMI in its investigation of their claim because "[b]oth Tom and Dana Spears gave numerous statements, as they understood it, under oath to Tennessee Farmers representatives," and "both gave depositions, under oath, to Tennessee Farmers' attorney."

A. Interpretation of the Policy

Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Merrimack v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001); *Brandt v. Bib Enters.*, Ltd., 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998); *Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn. Ct. App. 1991). Insurance policies are contracts and, thus, subject to the same rules of construction that are used to interpret other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn.1990); *Merrimack v. Batts*, 59 S.W.3d at 148. A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). Summary judgment is appropriate in contract cases where the terms of the contract are not ambiguous making the issue a pure question of law. *Id.* If the terms of the contract are ambiguous, then the court applies established rules of construction to determine the parties' intent. *Id.* "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact such that summary judgment is not proper." *Id.*

The respective rights of an insured and an insurance company are governed by their contract of insurance. *Merrimack v. Batts*, 59 S.W.3d at 148. As with any other contract, courts must give effect to the parties' intentions as reflected in their written contract of insurance. *Id.*; *Black v. Aetna Ins. Co.*, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995); *Blaylock & Brown Constr. Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). In so doing, the insurance policy should be construed as a whole in a reasonable and logical manner, *Black v. Aetna Ins. Co.*, 909 S.W.2d at 3, giving the policy's terms, as written, their natural and ordinary meaning. *Id.*; *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *Quintana v. Tennessee Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989). While language that is susceptible to more than one reasonable interpretation is ambiguous and should be construed in favor of the insured, *Tata v. Nichols*, 848 S.W.2d at 650, "the courts should not favor either party if the policy's language is unambiguous and free from doubt and

-7-

should enforce unambiguous policies as written." *Quintana v. Tennessee Farmers Mut. Ins. Co.*, 774 S.W.2d at 632 (internal citations omitted). Absent fraud, overreaching, or unconscionability, the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain. *Id.*

The insurance policy provided in pertinent part as follows:

**Legal Action Against Us**

No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under the Liability Coverage, no legal action may be brought against us until we agree in writing that the covered person has an obligation to pay, or until the amount of that obligation has been finally determined by judgment after trial. No person or entity has any right under this policy to bring us into any action to determine the liability of a covered person.

**Duty to Cooperate with Us**

All persons and entities seeking any coverage under this policy must:

1. cooperate with us and anyone we name in the investigation, settlement, or defense of any claim or suit; and
2. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign transcript of the answers; and
3. promptly provide us all records, receipts and invoices or certified copies of them and/or allow us to copy them; and
4. submit all proof of loss as we may require; and
5. submit to medical examinations by physicians we select at our expense and as often as we reasonably request; and
6. authorize us to obtain medical and other relevant records.

We do not find the language of the policy to be ambiguous. The Spears contend that "as there is no definition of an examination under oath in the policy, only a vague statement by Mr. Brooks, the policy is, at best, ambiguous with no clear meaning." The policy, however, does not use the term "examination under oath" or any other specialized term of art, rather it uses the common words "answer questions under oath." Given that the terms of the policy were clear and unambiguous, the Spears were bound by them.

B. The Spears' compliance with the policy requirements

Having found as a matter of law that the language of the policy is unambiguous, we must determine whether there is a genuine issue of material fact as to the Spears' compliance with the terms of the policy in order to determine whether TFMI is entitled to summary judgment. In support of its motion, TFMI pointed to the fact that Mr. Spears never answered questions under oath as

requested by TFMI and Mrs. Spears never completed her examination under oath. In response, the Spears contend there are genuine issues of material fact because examinations under oath are "discretionary in nature and are not a prerequisite for all insureds," and, in any event, they "may only be taken in a reasonable manner." The Spears point out that "[b]oth Tom and Dana Spears gave numerous statements, as they understood it, under oath to Tennessee Farmers representatives," and "both gave depositions, under oath, to Tennessee Farmers' attorney;" consequently, the Spears contend, it was not reasonable for TFMI to request the Spears answer questions under oath.

Tennessee courts have upheld similar duty to cooperate clauses as a pre-condition to exercising an insured's rights under the contract. *See Shelter Ins. Co. v. Spence*, 656 S.W.2d 36 (Tenn. Ct. App. 1983) *perm. appeal den.* Jul. 25, 1983 (held insurer was entitled under cooperation clause of policy to take sworn statement from each insured privately and out of each other's presence); *Widener v. Tenn. Farmers Mut. Ins. Co.*, No. 03A01-9506-CV-00203, 1995 WL 571868 (Tenn. Ct. App. Sept. 29, 1995) (recognizing an insurer's right to take an insured's statement under oath); *Jones v. Tenn. Farmers Mut. Ins. Co.*, No. M2003-00862-COA-R3-CV, 2004 WL 170359, at *2 (Tenn. Ct. App. Jan. 27, 2004) (recognizing *Shelter Ins. Co. v. Spence* as standing for the proposition that "[t]he contractual right of the insurer to compel the insured to submit to a statement under oath concerning a fire loss is unconditional"); *Tenn. Farmers Mut. Ins. Co. v. Bradford*, No. 02A01-9711-CV-00284, 1999 WL 528835 (Tenn. Ct. App. Jul. 23, 1999); *Gurien v. Allstate Ins. Co.*, No. 95-20-I, 01A01-9610-CH-00459, 1997 WL 431185 (Tenn. Ct. App. Aug. 01, 1997). In discussing the parameters of an examination under oath, the *Shelter* court stated:

> The right of the insurer to take and the obligation of the insureds to give sworn statements in accordance with the terms of the policy is not questioned. Fire policies such as the one in questions almost universally require that the insured cooperate with the insurer in the investigation of the fire as a condition precedent to performance by the company to indemnify the insured for his loss.

*Shelter*, 656 S.W.2d at 38. The court further explained that the principal purpose of taking such sworn statements was to obtain true and accurate information about the type and extent of damage and held that "the insurer, through a designated representative, may take a sworn statement from each insured privately." *Id.*

Courts in other jurisdictions have similarly interpreted the examination-under-oath requirement of an insurance policy and have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to an insured's recovery under the policy. *See Watson v. Nat'l Surety Corp. of Chicago, Ill.*, 468 N.W.2d 448 (Iowa 1991) (held that an insured's submission to question under oath was condition precedent to recovery under policy); *Wiles v. Capitol Indemnity Corp.*, 215 F.Supp.2d 1029 (E.D.Mo. 2001) (held that insured's failure to comply with insurer's requests for examination under oath constituted material breach of policy's cooperation clause, precluding action); *see also, e.g., Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 946 (11th Cir.1990); *West v. State Farm & Cas. Co.*, 868 F.2d 348, 349 (9th Cir.1989) (per curiam); *Stover v. Aetna Cas. & Sur. Co.*, 658 F.Supp. 156, 159 (S.D.W.Va.1987); *Kisting v. Westchester Fire Ins. Co.*, 290 F.Supp. 141, 147 (W.D.Wis.1968), aff'd, 416 F.2d 967 (7th

Cir.1969); *Warrilow v. Superior Court*, 142 Ariz. 250, 253, 689 P.2d 193, 196 (Ct. App. 1984); *Standard Mut. Ins. Co. v. Boyd*, 452 N.E.2d 1074, 1079 (Ind. Ct. App. 1983); *Allison v. State Farm Fire & Cas. Co.*, 543 So.2d 661, 663 (Miss.1989); *Azeem v. Colonial Assurance Co.*, 96 A.D.2d 123, 124, 468 N.Y.S.2d 248, 249 (1983), aff'd, 62 N.Y.2d 951, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984); *see also* 13 *Couch on Insurance 3d* § 196:24; *R.Y. Liang*, 4 A.L.R.3d 631 at §5; 1 *Insurance Claims and Disputes 5th* § 3:2; 16 *Williston on Contracts* § 49:106 (4th ed). We likewise find that submission to answer questions under oath when requested as provided for in the insurance policy at issue is a condition precedent to an insured's recovery under that policy.

We note that the *Watson* case, 468 N.W.2d 448, before the Iowa Supreme Court presents remarkably similar facts to those presented here. In *Watson*, the insured's property suffered a fire loss. Shortly after the fire, the insured gave a taped interview in a question-and-answer format to the insurer's regional adjuster. A few days later, the insured gave another taped interview to a member of the insurer's special investigative unit. No oath was administered during these interviews. About a month later, the insured submitted a sworn proof of loss. Another month later, the insurer received the investigator's written report which concluded that the fire was of incendiary origin. The insurer then initiated several written requests to question the insured under oath pursuant to the terms of the insurance policy. The insured refused the insurer's request contending that the earlier taped interviews given to the insurer's agents satisfied their obligation under the policy. The insurer then informed the insured that the unsworn interviews did not satisfy the policy requirement and again asked the insured to submit to an examination under oath. The insured again refused, but offered an affidavit stating that "I [plaintiff] have read the [transcribed] interview" and that "each and every response given in that interview is true and correct as I verily believe." The insurer reiterated its position that it would not accept the taped preliminary unsworn interviews in lieu of statements under oath and subsequently denied the insured's claim. *See Watson*, 468 N.W.2d at 449-450.

The Iowa Supreme Court held that submission to questions under oath was a condition precedent to an insured's recovery under an insurance policy that contained such a provision, but that an insured need only substantially comply in order to preserve his or her rights under the policy. *Watson*, 468 N.W.2d at 451. The court concluded that based on the facts of that case the insured had not substantially complied with the policy provision whose plain language required the insured to answer questions "under oath." Citing with approval decisions by the Eleventh and Ninth Circuits as well as the Indiana Court of Appeals, the Iowa Supreme Court found that an earlier unsworn interview, even where recorded and later verified, "cannot constitute substantial compliance with the insurer's request for questioning under oath." *Id.* at 451-452; *see Pervis*, 901 F.2d at 946 (held that several recorded statements to the insurer's representatives shortly after the fire were not "examinations under oath" as expressly provided for in the insurance contract); *West*, 868 F.2d at 349, 351 (held that answers given in a preliminary interview shortly after a fire were not statements given under oath even though the interview ended with the insured stating that he had truthfully answered the questions asked); *Boyd*, 452 N.E.2d at 1079 (held that the insured's refusal to submit to an examination under oath upon the insurer's request was a material breach of the insurance policy which relieved the insurer of its contractual duty to pay the loss even though the insurer had given a recorded statement to the insurer shortly after the fire).

Here, Mr. Spears gave two recorded interviews shortly after the fire – one to Mr. Lee Amonette, a TFMI claims adjustor, and another to Mr. Lee Brooks, a TFMI special investigator. Mr. Spears contends that these interviews constitute compliance with the policy provision requiring an insured to answer questions under oath because his statements were truthful. Regardless of whether Mr. Spears was truthful in his interviews with Mr. Amonette and Mr. Brooks shortly after the fire, they were unsworn statements and just as in *Watson*, verification after the fact does not change their status. Mr. Spears admitted that he did not raise his hand or otherwise make an oath to tell the truth before making his statements to Mr. Amonette or Mr. Brooks. The fact that Mr. Spears' statements were recorded also does not raise the status of Mr. Spears' earlier unsworn statements to questions under oath.

We are also not convinced by the Spears' argument that because they gave depositions during discovery in the present action they have now complied with the terms of the policy. This Court has noted that there is a difference between an examination under oath for purposes of an insurance investigation and a deposition during discovery. *See Shelter*, 656 S.W.2d at 38 (agreeing with the statement in *Dyno-Bite, Inc. v. The Travelers Companies*, 439 N.Y.S.2d 558, 560 (N.Y.App.Div. 1981) that "the right to examine under the cooperation clause of the insurance policy, however, is much broader than the right of discovery under the CPLR"). In any event, we find that giving a deposition after having filed suit against the insurer for failing to pay an insurance claim does not constitute cooperation under the terms of the policy. *See, e.g., Watson*, 468 N.W.2d at 452 (holding that an insured's belated offer to answer questions under oath were too late to be considered compliance with the insurance policy); *U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487 (5th Cir. 1992) (insured's subsequent offer to submit to examination under oath did not cure breach caused by his prior refusal of fire insurer's request); *Pervis*, 901 F.2d at 948 (insured's offer came too late to be considered); *Warrilow*, 255, 689 P.2d at 198 (insured's obligation of cooperation not met by promises of evidence to be supplied at some indefinite future time); *Azeem*, 468 N.Y.S.2d at 250 (insured's willingness to submit to examination under oath almost one and a half years after first scheduled examination and two years after fire does not satisfy contractual obligation of cooperation), aff'd, 62 N.Y.2d 951, 468 N.E.2d 54, 479 N.Y.S.2d 216 (1984).

Finally, the Spears contend that there is a genuine issue of material fact as to whether TFMI's request to question Mr. and Mrs. Spears under oath was reasonable. The Spears contend that it was unreasonable for TFMI to request that the Spears submit to an examination under oath because they had substantially cooperated with TFMI in its investigation. The Spears also contend that under the terms of the policy "examinations under oath may only be taken in a reasonable manner."

The policy provides that insured is required to "answer questions under oath when asked by anyone we name, as often as we reasonably ask...." The reasonableness referred to in the policy relates to the number of times TFMI seeks to question the insured under oath.[7] The plain language

_____

[7] Tennessee case law has established safeguards to ensure that such examinations are requested and conducted in a reasonable manner so as not to infringe on the rights of the insured. *See Shelter*, 656 S.W.2d at 38-39 (requiring the insurer to "give reasonable notice in writing, stating a definite time and place in the county of the insured's residence, (continued...)

-11-

of the policy gives TFMI the right to question Mr. Spears under oath when TFMI requests it. There is no requirement that TFMI justify its initial request to question an insured under oath. Under the terms of the policy, reasonableness only becomes an issue if and when TFMI makes multiple requests to question an insured under oath. While TFMI sent letters on October 18, January 31, and March 27, requesting that Mr. Spears answer questions under oath, these were all initial attempts to question Mr. Spears under oath, which he never did. We agree with Mr. Spears that under the terms of the policy TFMI's decision to seek an examination under oath was discretionary, however, once TFMI made such a request, Mr. Spears was under an obligation to answer questions under oath posed by an agent of TFMI. Any other efforts the Spears made toward cooperating with TFMI's investigation, such as giving statements shortly after the fire and providing certain documents, does not alter the fact that they materially breached the contract of insurance by refusing to answer questions under oath when TFMI requested in accordance with the policy.

Having found that the Spears are barred from seeking recovery under the policy as they materially breached the terms of the policy by failing to answer questions while under oath when requested by TFMI, we find the remaining questions – whether TFMI breached the contract of insurance by failing to pay the Spears' claim, whether TFMI failed to pay the Spears' claim in good faith, whether TFMI violated the Tennessee Consumer Protection Act, and whether Dana Spears had an insurable interest and right to recover under the policy – are pretermitted.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment dismissing this action.

Costs of the appeal are assessed to Tom and Dana Spears for which execution may issue if necessary.

_____

RICHARD H. DINKINS, JUDGE

---

[7](...continued)

where the examination is to be held, and it must designate a representative before the examination is to be taken. Each insured may have his or her attorney present at the time of the examination, but the attorney cannot take part in the examination. After the examination is completed, the original and a copy is to be submitted to the insured for his [or her] signature. A copy of the statement taken is also to be furnished to the insured.")