IRVING, P.J.,
for the Court:
¶ 1. On November 10, 2008, Brenda L. Mullen filed a complaint against Mississippi Farm Bureau Casualty Insurance Company, alleging bad-faith breach of contract arising from Farm Bureau’s denial of Brenda’s insurance claim following a house fire. Farm Bureau answered Brenda’s complaint and filed a counterclaim for a declaratory judgment declaring that it had no obligations to Brenda under the policy as a result of her alleged breach of the policy’s provisions.
¶ 2. On May 4, 2009, Farm Bureau moved for summary judgment, arguing that Brenda had breached the terms of her policy and voided her coverage by refusing to submit to an examination under oath and failing to produce financial information. The Tippah County Circuit Court granted Farm Bureau’s motion for summary judgment and declaratory relief. Feeling aggrieved, Brenda appeals and raises several issues on appeal related to the single issue of whether the circuit court erred in granting summary judgment.
¶ 3. Because there are genuine issues of material fact regarding whether Brenda refused to comply with the policy provisions regarding examinations under oath and requests for financial information, the circuit court erred in granting Farm Bureau’s motion for summary judgment. Therefore, we reverse the court’s judgment and remand this case for a trial on the merits.
FACTS
¶ 4. On March 31, 2008, a fire damaged Brenda’s house in Falkner, Mississippi. At the time, Brenda and her husband, Gene Mullen, resided in a house located in *1084 Walnut, Mississippi.[1] Farm Bureau insured the Falkner house under a dwelling package policy with Brenda as the only named insured.[2] The relevant policy provisions are as follows:
AGREEMENT
We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.
[[Image here]]
Section I — CONDITIONS
[[Image here]]
2. Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:
[[Image here]]
f. As often as we reasonably require:
(1) Show the damaged property;
(2) Provide us with records and documents we request and permit us to make copies; and
(3) Submit to examination under oath, while not in the presence of any other “insured,” and sign the same[.]
¶ 5. On April 3, 2008, Brenda provided an audio-recorded statement to Cory Wilburn, a Farm Bureau claim representative. Farm Bureau also presented Brenda with a “Release of Financial Information.” Brenda executed the release, which provided Farm Bureau with full access to all financial information held by “any bank, savings institution, mortgage company, credit reporting service, federal or state governmental agency or department, creditor, supplier, insurance company, gaming institution[,] or other financial institutions of [whatever] kind or nature.”
¶ 6. Gene, who was not a named insured under the policy, also gave a statement to Wilburn on April 3, 2008. During his statement, Gene provided the names of the banks that held the mortgages on the Falkner and Walnut homes. Additionally, Gene provided the outstanding balance of the mortgage on the Falkner home.
¶ 7. On April 17, 2008, Brenda gave a second recorded statement to Dennis Welch, Farm Bureau’s certified fire examiner. During her statement, Brenda provided the following financial information: (1) name of the bank that held the mortgage on the Falkner home, (2) amount of the monthly mortgage payment, (3) the mortgage’s outstanding balance, (4) appraised value of the home, (5) amount of the mortgage payment on the Walnut home, (6) name of the bank where her personal and business checking accounts were held, (7) names of the lending institutions that financed the Mullens’ vehicles, (8) amount of the monthly vehicle payments, (9) credit-card information and outstanding balances, and (10) amount of monthly household expenses. Additionally, Brenda indicated that there was a judgment lien on the Falkner home as a result of an auto-title dispute that would have to be paid if the house was sold.[3] Brenda also disclosed that the Mullens had sustained a previous fire loss to a different home in 1995. State Farm had insured the home and paid the claim, but later cancelled their policy. Finally, Brenda stated that she had undergone open-heart surgery in January 2008 and that Gene *1085 was undergoing treatment for prostate cancer. Neither Brenda nor Gene had health insurance.
¶ 8. Gene also gave a second recorded statement on April 17, 2008. In his statement, Gene confirmed that Brenda had recently undergone open-heart surgery and provided an estimate of the outstanding medical bills related to her surgery. Gene indicated that there were no outstanding bills associated with his cancer treatment. Gene also provided the name of the Mullens’ business, A & B Dirt Movers, and confirmed that there were no lawsuits against their business. Finally, Gene confirmed that there were no tax liens against his property, that he had never filed for bankruptcy, and that he had never been sued.
¶ 9. Farm Bureau later hired an attorney, Chris Deaton, to conduct an examination of Brenda under oath. On May, 29, 2008, Deaton sent a letter to Brenda requesting that she “submit to an examination under oath.”[4] Additionally, the letter asked Brenda to bring certain financial documents to the investigation including, loan applications, a listing of credit cards with account numbers, personal and business checking and savings account records, and state and federal income tax returns. The letter requested that Brenda contact Deaton’s office to schedule the examination. Finally, the letter explained that failure to provide the requested financial information and submit to an examination under oath would constitute a breach of the insurance policy.
¶ 10. On June 8, 2008, Deaton received a telephone call from someone who identified himself as Gene. The person indicated that Farm Bureau had no right to review the requested personal financial- information and that the Mullens would be contacting an attorney.
¶ 11. Ultimately, Brenda retained A. Norris Hopkins Jr. to represent her. On June 24, 2008, Hopkins sent Deaton the following letter, which stated in pertinent part:
Please be advised that this firm has been retained to represent the Mullen! ]s regarding this requested statement under oath by Farm Bureau. First and foremost, please provide me with a copy of the policy language that allows for Farm Bureau to violate the Mullens’ privacy, and furthermore, provide me with authority which allows Mississippi Farm Bureau to get three sworn statements from their insureds. Furthermore, please provide legal authority which would allow Farm Bureau, under the policy language, to be able to request information such as tax returns, credit card statements, applications for business and personal loans, personal and business checking accounts, phone records, and bankruptcy petitions.
It appears that Farm Bureau is in bad faith [by] denying this claim and requesting information in violation of the Mullens’ privacy rights. The Mullens have complied with the policy language and have given not only one, but two statements already, and it has been over three months since the date of the loss. We hereby call upon Farm Bureau to comply with the [cjontract of [i]nsurance with the Mullens and pay for their loss under the policy under five (5) days from the date of this correspondence. Certainly the Mullens will continue in good faith to cooperate with Farm Bureau!;] however, this intentional violation of thefir] privacy rights and demands that far exceed what is required *1086 under the policy will not be tolerated. Please provide me with a copy of the transcript from both statements under oath that have already been taken by Farm Bureau. If[,] after you provide all the information requested, we determine that indeed Farm Bureau has a right under the policy to move forward with the third statement, then we will be happy to arrange the same.
(Emphasis added).
¶ 12. On July 2, 2008, Deaton responded to Hopkins’s letter. Deaton advised Hopkins that the Mullens had not previously given their statements under oath, and he enclosed copies of the recorded statements given by Brenda and Gene to Farm Bureau’s representatives. Finally, he requested dates on which the Mullens would be available to give their statements under oath. Hopkins denies that he ever received this letter from Deaton.
¶ 13. Receiving no response from Hopkins, Deaton sent a second letter on August 6, 2008. In this letter, Deaton advised Hopkins that Farm Bureau would close the file within two weeks if it had not heard from Hopkins regarding possible dates for an examination of the Mullens under oath. Hopkins also denies that he received this letter.
¶ 14. On September 11, 2008, Deaton sent Hopkins a letter to inform him that Farm Bureau had denied Brenda’s claim because she had failed to comply with the policy provisions concerning submission to an examination under oath and provision of financial information as requested by Farm Bureau. On September 19, 2008, Hopkins responded, in pertinent part, as follows:
As you are aware, I represent the Mul-lens in the above referenced matter. This fact I advised you of on or about June 24, 2008. I am in receipt of your September 11, 2008 ... correspondence to my client, Brenda Mullen, advising of Farm Bureau’s denial of [her] claim. Furthermore, you advised that Farm Bureau has attempted to contact my client on four (4) occasions between May and August 2008. This latest correspondence [is] the one and only time I have been contacted by anyone on behalf of Farm Bureau regarding my client’s claim to include a request to conduct an examination under oath of my clients. Additionally, my clients advised that they have never been contacted nor requested to submit to an examination under oath since the time of my representation. Clearly, any attempt to do so would be in violation of Mississippi [l]aw and the Rules of Professional Conduct. As such, I would request any and all correspondence and phone logs wherein you requested that my client submit to an examination under oath on the dates of July 2, 2008, and August 6, 2008.
As I have stated in my June 24, 2008 ... correspondence, my clients are willing to cooperate with Farm Bureau in their claim. They remain willing to cooperate with Farm Bureau during the investigation of their claim. As you are aware, the Mullens have provided more than one statement to representatives of Farm Bureau regarding their claim. Whether these were sworn or [un]sworn, it was the understanding of my clients that they have given the statements requested by Farm Bureau regarding their claim that they are required to do under the policy. As a matter of fact, they submitted to more than one of these statements to assist Farm Bureau in evaluating their claim. At this time, I do not have the benefit of having all of these statements for which I have made the request to you on June 24, 2008. Regardless, my *1087 clients have no intention of not abiding by the terms of their contract nor have they at any time. They have made themselves available for statements on more than one occasion prior to my representation.
(Emphasis added).
¶ 15. On September 22, 2008, Deaton wrote Hopkins and enclosed a copy of his letters from May 29 and June 13, advising Brenda of Farm Bureau’s request that she submit to an examination under oath. Additionally, he enclosed the letters he sent to Hopkins on July 2 and August 6, requesting dates that the Mullens would be available for an examination under oath. On September 29, 2008, Deaton again wrote Hopkins asking if it was his position that he had never received the July 2 and August 6 letters. On October 1, 2008, Hopkins responded and again denied receiving the letters; however, he admitted that the address to which the letters were sent was correct. On November 10, 2008, Hopkins filed suit against Farm Bureau on Brenda’s behalf.
¶ 16. Additional facts, as necessary, will be related in our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 17. An appellate court reviews a circuit court’s decision to grant summary judgment de novo. Hartford Ins. Co. v. Sheffield, 808 So.2d 891, 894 (¶ 11) (Miss.2001). Summary judgment is appropriate where “the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). Such evidence is viewed in the light most favorable to the non-moving party. Sheffield, 808 So.2d at 894
(¶11).
¶ 18. The law in Mississippi is clear that an insurance policy is rendered void by the insured’s failure to submit to an examination under oath. Allison v. State Farm Fire & Cas. Co., 543 So.2d 661, 663 (Miss.1989). Furthermore, an insured’s failure to provide financial information constitutes a material breach of the insurance contract and also voids coverage. Monticello Ins. Co. v. Mooney, 733 So.2d 802, 807 (¶ 21) (Miss.1999). Brenda argues that there are genuine issues of material fact regarding whether she failed to fulfill her obligations under the policy related to examinations under oath and requests for financial information.
¶ 19. In support of its position that Brenda failed to comply with the policy provision regarding examinations under oath, Farm Bureau cites several cases for the proposition that unsworn statements given to adjusters, agents, or others associated with the insurance claim are insufficient to satisfy the insured’s obligation to give an oral examination under oath. In Boston Insurance Co. v. Mars, 246 Miss. 36, 40-41, 148 So.2d 718, 719 (1963), the insurance company scheduled an oral examination under oath with the insured. The insured, Ervin Mars, arrived at the examination with his attorney, who stated that Mars would not give a recorded statement. Id. at 41, 148 So.2d at 719. Mars’s attorney explained that requiring an additional statement was unreasonable given that “numerous statements [had] been taken by the adjustor, agents, the sheriff!,] and state fire marshal.” Id. The Mississippi Supreme Court held that Mars’s refusal to submit to the examination under oath was a violation of the express provisions of the policy, which resulted in a forfeiture of his right to recover under it. Id. at 42,148 So.2d at 720.
*1088 ¶20. Farm Bureau cites Allison and Mooney for the proposition that an insured’s refusal to produce financial documents or answer questions regarding the insured’s financial status voids coverage under the policy. In Allison, the insureds refused to sign release forms permitting State Farm to review their financial records. Allison, 543 So.2d at 662. State Farm also requested that the insureds submit to an oral examination under oath and produce certain financial records. Id. The insureds complied with the oral-examination request, but they refused to produce their financial records or answer questions regarding their financial status. Id. The records in question included income tax returns, bank records, loan documents, property records, salary information, mortgage information, and credit history. Id. Our supreme court upheld the circuit court’s grant of summary judgment based on the insureds’ refusal to answer questions related to their financial situation. Id. at 664.
¶ 21. In Mooney, the insurance company requested that the named insured and her husband, who was not a named insured, submit to an examination under oath. Mooney, 733 So.2d at 804 (¶ 6). The insurance company also requested the couple’s personal financial and business records. Id. The insured agreed to submit to an examination under oath, but her husband did not. Id. The insured claimed that the records associated with her business had been lost in the fire, and she refused to provide the couple’s personal financial records and the records associated with her husband’s business based on her belief that such records were “immaterial to the investigation.” Id. Our supreme court held that the insured’s husband was not required to submit to an examination under oath given that he was not a named insured under the policy; however, the insurance company was entitled to the husband’s personal financial records and his business records given the insured’s involvement in both. Id. at 806 (¶ 18). Consequently, the supreme court held that the insured had breached the terms of the insurance policy by refusing to produce the requested financial records. Id. at 805-06 (¶¶ 14-15).
¶ 22. Farm Bureau also cites authority from other jurisdictions for our consideration. In Watson v. National Surety Corp. of Chicago, Illinois, 468 N.W.2d 448, 449-50 (Iowa 1991), the insureds gave taped interviews to the insurance company’s representatives, but they refused to submit to an examination under oath. The insureds argued that the earlier taped interviews, which were not given under oath, satisfied their obligation under the policy. Id. at 450. The Iowa Supreme Court held that the insureds’ recorded statements to the insurance company’s representatives were not a substitute for an examination under oath, and the insureds’ refusal to be questioned under oath constituted a breach of the policy. Id. at 452.
¶ 23. In Spears v. Tennessee Farmers Mutual Insurance Co., 300 S.W.3d 671, 674 (Tenn.Ct.App.2009), Mr. and Mrs. Spears,[5] the named insureds, suffered fire damage to their vehicle. Mr. Spears gave statements to the insurance company’s claims adjuster and later to its investigator. Id. The insurance company’s attorney later requested that the Spearses submit to an examination under oath. Id. The Spearses agreed to be examined under oath; however, Mrs. Spears’s examination was cut short due to a prior appointment, and Mr. Spears did not answer any questions under oath. Id. at 674-75. The Spearses retained an attorney who wrote *1089 the insurance company’s attorney and expressed that the Spearses, “despite some reluctance, intended to cooperate [with the insurance company’s] investigation....” Id. at 675. The attorneys eventually agreed to schedule an examination of the Spearses on January 31, 2006. However, prior to the scheduled examination, the Spearses retained new counsel. Id. The insurance company’s attorney contacted the Spearses’ new attorney, who indicated that the Spearses would not participate in the January 31 examination and that they intended to bring legal action against the insurance company. Id. The Tennessee Court of Appeals held that despite their previous cooperation with the investigation into their claim, such as giving statements and providing certain documents, the Spearses had breached the insurance contract by refusing to answer questions under oath. Id. at 683.
¶ 24. While the above cases all support Farm Bureau’s argument that refusal to submit to an examination under oath or provide requested financial information voids coverage, all of the cases involve a critical fact that is not present in this case-willful refusal to comply with these policy provisions on the part of the insured. In fact, Farm Bureau conceded during oral argument that while it believed that Hopkins’s letters were tantamount to a refusal to comply with the policy provisions regarding examinations under oath and requests for financial information, Brenda never refused to comply with these provisions.
¶ 25. In Hopkins’s correspondence with Farm Bureau’s attorney, he consistently stated that the Mullens remained willing to cooperate with Farm Bureau regarding the resolution of their claim. Additionally, Hopkins explained that the Mullens had no intention of not abiding by the terms of their insurance policy with Farm Bureau. Consequently, there is no evidence of a willful refusal by the Mullens to submit to an examination under oath.
¶ 26. Furthermore, there is no evidence that Brenda refused to provide Farm Bureau with the requested financial information. Shortly after the fire, Brenda executed a financial release that gave Farm Bureau full access to all financial information held by “any bank, savings institution, mortgage company, credit reporting service, federal or state governmental agency or department, creditor, supplier, insurance company, gaming institution[,] or other financial institutions of [whatever] kind or nature.” Additionally, Brenda and Gene offered financial information during their taped interviews regarding their business, banking institutions, mortgage lenders, personal indebtedness, and judgment liens. Brenda and Gene also answered questions about prior bankruptcy filings, pending lawsuits, tax liens, and outstanding medical expenses. Admittedly, the Mullens did not supply copies of financial documents to Farm Bureau; however, Farm Bureau had a signed financial release and the names of the banks and lending institutions with which the Mullens held accounts, which would have enabled Farm Bureau to obtain the documents necessary for its investigation of Brenda’s claim.
¶ 27. The facts of this case simply do not support the circuit court’s conclusion that Brenda refused to comply with the policy provisions regarding examinations under oath and requests for financial information. Brenda and Gene willingly gave two recorded statements to Farm Bureau where they answered questions about their financial status. When Brenda received a request for a third statement, to be given under oath, from Farm Bureau’s attorney, she retained Hopkins to assist her in resolving her claim. Her decision to retain *1090 counsel could hardly be interpreted as a refusal to comply with the policy provisions.
¶ 28. While Farm Bureau contends that Hopkins’s failure to respond to Deaton’s July 2, 2008 and August 6, 2008 letters constitutes a refusal to comply with the policy provisions, Hopkins submitted a sworn affidavit stating that he did not receive those letters. Therefore, Hopkins’s failure to respond to Deaton is not an appropriate basis for finding that Brenda refused to comply with the policy provisions where the reason for Hopkins’s failure to respond is a material, disputed fact. Based on our review of the record, there is no other evidence that arguably could be considered a willful refusal by Brenda to comply with the policy provisions regarding examinations under oath and requests for financial information. Consequently, the circuit court erred in awarding summary judgment on that basis.
¶ 29. Based on the above, we hold that the circuit court erred in granting Farm Bureau’s motion for summary judgment and its request for declaratory relief. As such, we reverse the judgment of the circuit court and remand this case for a trial on the merits.
¶ 30. THE JUDGMENT OF THE TIPPAH COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

.The Mullens used the Falkner house as periodic housing for employees of their construction and dirt moving business, A & B Dirt Moving, LLC.

. Farm Bureau also insured the Walnut house.

. Brenda stated that the judgment lien was for either $5,000 or $6,000.

. There is no explanation provided in the record as to why Farm Bureau did not take Brenda’s April 3, 2008 statement or her April 17, 2008 statement under oath.

. The insureds’ first names are not provided in the court’s opinion.