IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 13, 2024 Session

## MURALI PONNAPULA v. IMMANUEL WRIGHT

**Appeal from the Circuit Court for Shelby County**
**No. CT-004704-17   Valerie L Smith, Judge**

_____

### No. W2023-00703-COA-R3-CV

_____

Following a motor vehicle accident, Appellant/the insured brought a breach of contract claim against Appellee/the automobile insurer.  In a motion for summary judgment, Appellee argued that Appellant materially breached the duty to cooperate clause of the insurance policy, which barred his recovery.  The trial court granted summary judgment in favor of Appellee, finding that there was no genuine issue of material fact that Appellant materially breached the insurance policy by failing to submit to an examination under oath.  The trial court concluded that the material breach barred Appellant from recovery under the policy.  Appellant appeals.  Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

Regina A. Guy, Memphis, Tennessee and Sheila F. Campbell, North Little Rock, Arkansas, for the appellant, Murali Ponnapula.

Andrew H. Owens and Ashleigh C. Kiss, Memphis, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance.

## OPINION

### I. Background

On November 16, 2016, Appellant Murali Ponnapula was involved in a motor

vehicle accident with Immanuel Wright.[1]  At the time of the accident, Mr. Ponnapula had an automobile insurance policy with Appellee Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), which provided him with uninsured/underinsured motorist coverage.  After the accident, Mr. Ponnapula and his wife, Dhana Ponnapula, made an uninsured/underinsured motorist claim with Tennessee Farmers.  Tammie Nichols was the adjuster assigned to the Ponnapulas' claim.  Tennessee Farmers settled the property damage claim with the Ponnapulas.  On May 1, 2017, Ms. Nichols, on behalf of Tennessee Farmers, proposed a $34,000.00 settlement offer for Mr. Ponnapula's bodily injury claim based on the initial information he had provided.  On June 28, 2017, Mr. Ponnapula responded to the settlement offer requesting additional compensation for his pain and suffering.  On July 7, 2017, Mr. Ponnapula requested that his claim be closed, and Tennessee Farmers closed the claim.

On August 16, 2017, Mr. Ponnapula requested that his claim be re-opened, and Tennessee Farmers re-opened the claim.  That same day, Ms. Nichols sent Mr. Ponnapula an email requesting that he complete and sign a HIPAA release to allow a third-party to review his medical records.  On August 17, 2017, Mr. Ponnapula replied to Ms. Nichols' request, implicitly refusing to sign the release, claiming that Tennessee Farmers owed him a remaining balance of $33,700.02 from the settlement, and stating that if his claim was not settled in 30 days he would take legal action.[2]  By email of August 18, 2017, a second representative from Tennessee Farmers, Randy Caldwell, explained to Mr. Ponnapula that he had a duty to cooperate with Tennessee Farmers during the investigation of his claim and that his failure to do so could result in the denial of his claim.  On August 21, 2017, Tennessee Farmers sent a letter to Mr. Ponnapula reiterating its understanding that Mr. Ponnapula was refusing to sign the HIPAA release and stating that examinations under oath would be forthcoming to obtain the information needed to process the claim.

On August 30, 2017, Tennessee Farmers' attorney, Andrew Owens, sent a letter to the Ponnapulas explaining that the examinations under oath were scheduled for September 28, 2017.  Also, in the letter, Mr. Owens requested copies of Mr. Ponnapula's federal income tax returns for 2014, 2015, and 2016.

On September 6, 2017, Mr. Ponnapula sent a letter to Ms. Nichols stating that the balance owed him on the settlement was $33,700.02, and that he would take legal action if his claim was not settled in 60 days.  On September 9, 2017, Mr. Ponnapula provided Tennessee Farmers with a signed HIPAA release.

By email of September 12, 2017, Mr. Owens advised Mr. Ponnapula that there was

---

[1] Mr. Wright did not file an appellate brief in this matter, and the issues in this appeal do not concern him.
[2] As explained, *infra*, Tennessee Farmers previously paid Mr. Ponnapula $299.98 as part of his policy, leaving $33,700.02 as the balance that would have been owed had there been an enforceable settlement agreement between the parties.

no settlement offer currently extended to him and that he would see the Ponnapulas at their examinations under oath. On September 21, 2017, Mr. Ponnapula sent a letter to Mr. Owens wherein he argued that he had already given statements under oath and that his tax returns had no relevance to the claim. Mr. Ponnapula stated that he would "take necessary action" after receiving a copy of the transcripts from his previous statements. The Ponnapulas did not appear for the September 28, 2017 examinations under oath.

On October 12, 2017, Mr. Owens replied to Mr. Ponnapula, explaining that Mr. Ponnapula had never given an examination under oath. Mr. Owens again reminded Mr. Ponnapula of his duty to cooperate with Tennessee Farmers in the processing of his claim, which included providing relevant tax information and examinations under oath. Mr. Owens informed Mr. Ponnapula that the examinations under oath had been rescheduled for October 24, 2017. The Ponnapulas did not appear for the rescheduled examinations.

On November 14, 2017, Mr. Ponnapula filed a complaint against Mr. Wright in the Circuit Court of Shelby County ("trial court") and issued a summons to Tennessee Farmers as his uninsured/underinsured motorist carrier. On November 30, 2017, Tennessee Farmers sent a letter to the Ponnapulas, denying their remaining claim due to their failure to cooperate with the investigation. Tennessee Farmers answered the complaint and raised as a defense Mr. Ponnapula's refusal to cooperate and resulting breach of the insurance policy.

On August 2, 2022, Tennessee Farmers filed a motion for summary judgment, arguing that Mr. Ponnapula could not recover under the insurance policy because he materially breached it when he refused to cooperate with the investigation of the claim.

On November 9, 2022, Mr. Ponnapula amended the complaint and alleged breach of contract and bad faith because Tennessee Farmers failed to honor the alleged $34,000.00 settlement agreement. On December 14, 2022, Tennessee Farmers filed an answer to the amended complaint, again alleging Mr. Ponnapula's material breach of the insurance policy as a complete bar to recovery.

On April 12, 2023, the trial court heard Tennessee Farmers' motion for summary judgment. By order of April 18, 2023, the trial court granted the motion. In pertinent part, the trial court concluded that: (1) there was no evidence of an offer and acceptance that would have created an enforceable settlement agreement between Mr. Ponnapula and Tennessee Farmers; (2) there was no genuine issue of material fact as to Mr. Ponnapula's noncompliance with the terms of the insurance policy; and (3) by failing to answer questions under oath, Mr. Ponnapula materially breached the insurance policy and was precluded from seeking recovery under it. Mr. Ponnapula filed a timely appeal.

## II. Issues

Mr. Ponnapula raises two issues for this Court's review, as stated in his brief:

1. The trial court erred in finding that there were no genuine issues of material fact whether the plaintiff-appella[nt] breached his duty under the insurance policy to cooperate in giving an examination under oath.

2. The trial court erred in finding that there were no genuine issues of material fact whether the plaintiff-appella[nt] accepted the offer to settle that had not been withdrawn by defendant-appellee.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim, or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "[w]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* [*Ltd. v. Zenith Radio Corp*.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

## IV. Analysis

Mr. Ponnapula argues that the trial court erred when it concluded that there was no genuine issue of material fact that: (1) he breached his duty under the insurance policy to cooperate in giving an examination under oath; and (2) there was no enforceable settlement agreement between the parties. Because the question of whether there was an enforceable settlement agreement between the parties would dispose of the case, we address it first.

### A. No Enforceable Settlement Agreement

The Tennessee Supreme Court has explained that "settlement agreements are contracts between the parties, and the rules governing the interpretation of contracts apply to settlement agreements." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012) (citing *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012)). An enforceable contract "must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991) (citing *Johnson v. Cent. Nat'l Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962)); *see also Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 675 n.8 (Tenn. Ct. App. 2007) ("The legal mechanism by which parties show their assent to be bound is through offer and acceptance."); Restatement (Second) of Contracts §§ 17, 22 (explaining that a valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance). There is a "meeting of the minds" when the parties are in mutual assent to the terms. *In re Estate of Josephson*, No. M2011-01792-COA-R3-CV, 2012 WL 3984613, at *2 (Tenn. Ct. App. Sept. 11, 2012). As this Court has explained,

> [t]he contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences regarding continuation or modification of the original contract might reasonably be drawn.

*Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) (citing *Batson v. Pleasant View Utility Dist.*, 592 S.W.2d 578, 582 (Tenn. App. 1979); *Balderacchi v. Ruth*, 256 S.W.2d 390, 391 (Tenn. Ct. App. 1953)). Furthermore, when an offer is extended but the offeree "places conditions on his or her acceptance or varies the terms of the offer," there is no acceptance of the original offer. *Grace v. Grace*, No. W2016-00650-COA-R3-CV, 2016 WL 6958887, at *4 (Tenn. Ct. App. Nov. 29, 2016) (citing *Westfall v. Brentwood Serv. Grp., Inc.*, No. E2000-01086-COA-R3-CV, 2000 WL 1721659, at *5 (Tenn. Ct. App. Nov. 17, 2000)). Rather, the offeree's "'expression constitutes a rejection of the original offer and initiation of a new offer.'" *Id.* (quoting *Westfall*, 2000 WL 1721659, at *5). Indeed, "a proposal to accept,

or an acceptance, upon terms varying from those offered, is a rejection of the [original] offer, and puts an end to the negotiation unless the party who made the original offer renews it, or assents to the modification suggested." ***Canton Cotton Mills v. Bowman Overall Co.***, 257 S.W. 398, 402 (Tenn. 1924) (internal citation omitted); *see also* Restatement (Second) of Contracts § 59 ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer.").

The parties do not dispute that Tennessee Farmers extended a $34,000.00 settlement offer to Mr. Ponnapula through its adjuster, Ms. Nichols, on May 1, 2017. In the email to Mr. Ponnapula, Ms. Nichols wrote:

> With the information you have provided[,] I can offer settlement of $34,000.00. I will have to take out what I have already paid under your Med pay part of your policy which is $299.98. The balance I could pay is $33,700.02.

It is undisputed that this offer was made to settle Mr. Ponnapula's bodily injury claim. On June 28, 2017, Mr. Ponnapula responded to Ms. Nichols' settlement offer, to-wit:

> I received a statement from Aetna. Total charges are $3[,]872.00. I paid $1[,]024.28. It is my responsibility to pay medical bills to Aetna. ***In final settlement please include amount for pain and suffering***. . . .

(Emphasis added).

In the final order, the trial court concluded that there was "no evidence of an offer and acceptance which would have created an enforceable settlement agreement between [Mr. Ponnapula] and Tennessee Farmers." In reaching this conclusion, the trial court determined that Mr. Ponnapula's request for pain and suffering was a counter-offer. We agree. Mr. Ponnapula's request for pain and suffering was a request for additional compensation, despite Mr. Ponnapula not assigning a numerical value to it. Such request changed the terms of the original offer, making it a counter-offer. *See **Grace***, 2016 WL 6958887, at *4; ***Westfall***, 2000 WL 1721659, at *5. The counter-offer acted as a rejection of Tennessee Farmers' original offer. ***Id.*** Thus, Mr. Ponnapula's request for additional compensation, *i.e.,* pain and suffering, ended the parties' negotiations unless Tennessee Farmers renewed its original offer or agreed to Mr. Ponnapula's counter-offer. *See **Canton Cotton Mills***, 257 S.W. at 402; Restatement (Second) of Contracts § 59. The evidence shows that Mr. Owens, Tennessee Farmers' attorney, sent an email to Mr. Ponnapula on September 12, 2017, advising him that there was no settlement offer currently extended to him. Thus, the record shows that Tennessee Farmers neither renewed its original offer nor agreed to Mr. Ponnapula's counter-offer. Accordingly, Mr. Ponnapula's counter-offer ended the settlement negotiations. As such, the trial court correctly concluded that there

was no enforceable settlement agreement between Mr. Ponnapula and Tennessee Farmers. We now turn to Mr. Ponnapula's second issue, *i.e.*, whether the trial court erred when it found that there was no genuine issue of material fact that Mr. Ponnapula materially breached his duty to cooperate under the insurance policy.

## B. Breach of Insurance Policy

The insurance policy between Tennessee Farmers and Mr. Ponnapula contained a clause titled "Duty to Cooperate with Us." This clause provided, in pertinent part:

> Following any loss, accident, claim or suit, any persons and entities seeking coverage under this policy and any designee must:
>
> > 1. Cooperate with [Tennessee Farmers] and anyone [Tennessee Farmers] name[s] in the investigation, settlement or defense of any loss, accident, claim or suit; and
> >
> > 2. Answer questions in person, under oath in Tennessee when asked by anyone [Tennessee Farmers] name[s], as often as [Tennessee Farmers] ask[s], while being videorecorded and/or audiorecorded if requested, and sign the transcript of the answers (before a notary), and return; and
> >
> > 3. Promptly provide [Tennessee Farmers] with, allow [Tennessee Farmers] to copy, and give [Tennessee Farmers] written authorization to obtain all information, pertinent documents, tangible items, records, tax returns, receipts and invoices which [Tennessee Farmers] may request; and
> >
> > ***
> >
> > 6. Authorize [Tennessee Farmers] to obtain medical and other relevant records[.]

The insurance policy also contained a clause titled "Legal Action Against Us," which provided that "No legal action may be brought against [Tennessee Farmers] until there has been full compliance with all the terms of [the] policy." In short, the foregoing provisions provided that Mr. Ponnapula had a duty to cooperate with Tennessee Farmers during the investigation of his claim, including submitting to an examination under oath when requested, and he could not bring a legal action against Tennessee Farmers until he fully complied with all terms of the insurance policy.

This Court previously analyzed a similar breach of contract claim concerning an

almost identical insurance policy. In ***Spears v. Tennessee Farmers Mutual Insurance Company***, 300 S.W.3d 671, 673 (Tenn. Ct. App. 2009), the Spearses, *i.e.,* the insureds/the appellants, had a policy with Tennessee Farmers, *i.e.,* the insurer/the appellee, on a 2004 Chevrolet C15 Tahoe. While still insured with Tennessee Farmers, the Tahoe was "burned from the inside," and the Spearses filed a claim for loss on the vehicle. ***Id.*** at 674. Mr. Spears was questioned twice at the beginning of the investigation but never under oath. ***Id.*** Thereafter, Mr. Spears filed a sworn statement in proof of loss with Tennessee Farmers seeking $38,900.00 in money damages under the insurance policy. ***Id.*** On suspicion of fraud, Tennessee Farmers requested that the Spearses submit to examinations under oath, as provided in their insurance policy, and bring certain documents to same. ***Id.*** The Spearses appeared for the examination under oath and brought most of the requested documents. ***Id.*** However, Mrs. Spears was the only party to answer questions under oath. ***Id.*** During the examination, Mrs. Spears became upset, and her examination ended early because the Spearses had another appointment to attend. ***Id.*** Because her examination was incomplete, Mrs. Spears did not sign the transcript of her answers. ***Id.*** at 675. The Spearses did not attend their next appointment and instead visited their local Tennessee Farmers' agent's office to express their disagreement with the examinations under oath. ***Id.*** Thereafter, the Spearses retained an attorney who provided Tennessee Farmers with additional documentation and coordinated subsequent examinations under oath. ***Id.*** Before attending the examinations under oath, the Spearses retained another attorney who informed Tennessee Farmers that the Spearses would not participate in the scheduled examinations under oath and intended to bring a legal action against Tennessee Farmers. ***Id.*** Tennessee Farmers sent another letter requesting that the Spearses attend subsequent examinations under oath. ***Id.*** The Spearses did not attend these examinations. ***Id.***

The Spearses filed suit, alleging, *inter alia*, that Tennessee Farmers breached the insurance policy. ***Id.*** Tennessee Farmers filed a motion for summary judgment seeking to dismiss the Spearses' breach of contract claim, which the trial court granted. ***Id.*** 676. On appeal, this Court analyzed Tennessee Farmers' argument that the Spearses breached the insurance contract by: (1) failing to answer questions under oath when required by Tennessee Farmers; and (2) prematurely bringing a legal action against Tennessee Farmers prior to fully complying with the terms of the contract. ***Id.*** at 678. Tennessee Farmers argued that the foregoing breaches relieved it of its obligation to perform under the insurance policy. ***Id.***

In resolving ***Spears***, we first explained that "insurance policies are contracts and, thus, subject to the same rules of construction that are used to interpret other types of contracts." ***Id.*** (citing ***McKimm v. Bell***, 790 S.W.2d 526, 527 (Tenn. 1990)). Accordingly, when construing an insurance policy, a court must first determine whether the language in the policy is ambiguous. ***Spears***, 300 S.W.3d at 678 (citing ***Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.***, 78 S.W.3d 885, 890 (Tenn. 2002)). "Summary judgment is appropriate in contract cases where the terms of the contract are not ambiguous making the issue a pure question of law." ***Id.*** As with other contracts, "[t]he respective

rights of an insured and an insurance company are governed by their contract of insurance," and "courts must give effect to the parties' intentions as reflected in their written contract of insurance." *Id.* at 678-79 (internal citations omitted). If the language in the insurance policy is unambiguous, courts should enforce the policies as written. *Id.* at 679 (citing *Quintana v. Tennessee Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989)). "Absent fraud, overreaching, or unconscionability, the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain." *Id.* On this Court's review, the language in the insurance policy at issue was not ambiguous, and Mr. Ponnapula does not argue otherwise. "Given that the terms of the policy were clear and unambiguous," Mr. Ponnapula was bound by them. *Id.*

Having concluded that Mr. Ponnapula was bound by the terms of the policy, we turn to examine whether such terms acted as a pre-condition to Mr. Ponnapula's right to recover under the policy. In *Spears*, this Court explained that "Tennessee courts have upheld similar duty to cooperate clauses as a pre-condition to exercising an insured's rights under the contract." *Id.* at 680 (internal citations omitted). One such case, *Shelter Insurance Companies v. Spence*, held that the cooperation clause of an insurance policy entitled the insurer to take sworn statements from each insured privately and out of each other's presence. 656 S.W.2d 36, 38 (Tenn. Ct. App. 1983). This Court explained that the "obtaining of true and accurate information about the type and extent of damage to the insured premises and its contents is relevant and material." *Id.*

The *Spears* Court also examined cases from other jurisdictions, including *Watson v. National Surety Corporation of Chicago, Illinois*, 468 N.W.2d 448 (Iowa 1991), an Iowa Supreme Court case with facts similar to *Spears*. Citing *Watson*, the *Spears* Court concluded that other jurisdictions "have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to an insured's recovery under the policy." *Spears*, 300 S.W.3d at 680 (citing *Watson*, 468 N.W.2d at 451). The *Spears* Court likewise concluded that "submission to answer questions under oath when requested as provided for in the insurance policy at issue is a condition precedent to an insured's recovery under that policy." *Spears*, 300 S.W.3d at 681. However, the *Spears* Court noted that the *Watson* Court held that "an insured need only *substantially comply* in order to preserve his or her rights under the policy." *Spears*, 300 S.W.3d at 681 (citing *Watson*, 468 N.W.2d at 451) (emphasis added).

Ultimately, the *Spears* Court determined that the Spearses "materially breached the contract of insurance by refusing to answer questions under oath when [Tennessee Farmers] requested in accordance with the policy." *Spears*, 300 S.W.3d at 683. In reaching this conclusion, the *Spears* Court considered that Mr. Spears gave two recorded, unsworn, interviews shortly after the fire, and that the Spearses gave depositions during the discovery portion of the underlying litigation. *Id.* at 682. However, the *Spears* Court distinguished an unsworn interview and a discovery deposition from an examination under oath. *Id.* Finally, the *Spears* Court concluded that Tennessee Farmers had the right to question the

Spearses under oath, as stated in the policy, even if Tennessee Farmers' decision to seek an examination under oath was discretionary. *Id.* at 683. Once Tennessee Farmers made such a request,

> Mr. Spears was under an obligation to answer any questions under oath posed by an agent of [Tennessee Farmers]. Any other efforts the Spears[es] made toward cooperating with [Tennessee Farmers'] investigation, such as giving statements shortly after the fire and providing certain documents, does not alter the fact that they materially breached the contract of insurance by refusing to answer questions under oath when [Tennessee Farmers] requested in accordance with the policy.

*Id.* For the foregoing reasons, the **Spears** Court concluded that the Spearses materially breached the insurance policy and were barred from seeking recovery under it. *Id.*

In ***Farmers Mutual of Tennessee v. Atkins***, No. E2014-00554-COA-R3-CV, 2014 WL 7143292 (Tenn. Ct. App. Dec. 15, 2014), this Court interpreted the holding in **Spears**. In **Atkins**, this Court opined that

> . . . the **Spears** Court did not hold that every failure to fully submit to questioning would be considered a material breach of the insurance contract. Instead, the Court considered the attendant circumstances of the insureds' failure to submit to questioning under oath, including Mr. Spears' early cooperation, and the insured's failure to submit to full questioning on not one, but three separate occasions. Under these circumstances, the Court concluded that the insured's behavior constituted a material breach of the insurance policy, which breach precluded their recovery.

> The **Spears** Court's suggestion that substantial compliance with an Examination Under Oath provision may be sufficient to preserve an insured's ability to recover under an insurance policy is consistent with the general contract principle that: "[I]n order for a contractual breach to be sufficient to relieve the non-breaching party of its contractual obligations, the initial breach must be 'material.'" ***DePasquale v. Chamberlain***, 282 S.W.3d 47, 53 (Tenn. Ct. App. 2008).

*Atkins*, 2014 WL 7143292, at *8.[3]

---

[3] For completeness, we note that the facts in **Atkins** are distinguishable from both **Spears** and the case before us. In **Atkins**, this Court concluded that there was a factual dispute concerning Ms. Atkins' failure to submit to the examination under oath. **Atkins**, 2014 WL 7143292, at *8. Specifically, this Court considered the fact that Ms. Atkins informed her insurer that she was not planning to pursue her insurance claim while there were criminal charges pending against her, and she declined to participate in the examination under oath due to the pending criminal charges. *Id.* This Court also noted that Ms. Atkins filed her initial

- 10 -

On appeal, Mr. Ponnapula does not dispute that he failed to appear for the scheduled examinations under oath. Although somewhat difficult to understand, we deduce that his first argument is that he "conformed his conduct to the terms of the policy by cooperating with the adjuster where she believed that she had sufficient information to make him an offer of $34,000.00 on his claim." Concerning this argument, it appears that Mr. Ponnapula was operating under the mistaken belief that there was an enforceable settlement agreement of $34,000.00 between the parties. Mr. Ponnapula argues that Tennessee Farmers did not require additional medical records/information because it had already offered him a settlement based on medical bills Mr. Ponnapula previously provided. As discussed at length, *supra*, when Mr. Ponnapula extended a counter-offer to Tennessee Farmers on June 28, 2017, and when Tennessee Farmers neither accepted the counter-offer nor re-extended the initial offer, that settlement negotiation ended. Thereafter, Mr. Ponnapula requested that his claim be closed. At the re-opening of the claim, Tennessee Farmers determined that more information was required to process the claim and asked that Mr. Ponnapula execute a HIPAA release to obtain such information. Tennessee Farmers was under no obligation to justify this request to Mr. Ponnapula, *see* **Spears**, 300 S.W.3d at 683, and, as discussed above, the insurance policy required that Mr. Ponnapula cooperate with such requests to facilitate his recovery under the policy. As explained more thoroughly below, Mr. Ponnapula failed to comply with Tennessee Farmers' requests.

We deduce that Mr. Ponnapula's next argument arises from Tennessee Farmers' attempt to process Mr. Ponnapula's claim for the second time. On appeal, Mr. Ponnapula argues that there are genuine issues of material fact concerning whether Tennessee Farmers had a "motive to deprive [Mr. Ponnapula] of his right under the insurance policy to be compensated . . . ." Specifically, Mr. Ponnapula argues that Tennessee Farmers "intentionally inhibited" him from having his claim processed in a timely manner. Contrary to Mr. Ponnapula's arguments, the record shows that Mr. Ponnapula's own actions (and inactions) delayed the processing of his claim and ultimately led to the denial of it. First, Mr. Ponnapula refused to execute a HIPAA release so that Tennessee Farmers could have his medical records reviewed by a third-party. Ms. Nichols testified in her deposition that, although Mr. Ponnapula previously provided her with some of his medical records, the third-party reviewer determined that it did not have all of the information necessary to review Mr. Ponnapula's claim. Thus, the reviewer required the HIPAA release so it could obtain the remaining medical records necessary for review. Mr. Ponnapula's refusal to execute the HIPAA release and his threat of legal action caused his claim to be escalated to Tennessee Farmers' legal counsel. In her deposition, Ms. Nichols testified that once she turned over Mr. Ponnapula's file to the attorney's office, the claims process continued with the attorney from that point forward. Because Mr. Ponnapula

---

complaint solely to toll the statute of limitations, and she almost immediately voluntarily dismissed it. *Id.* The *Atkins* Court concluded that the foregoing "circumstances [were] certainly relevant and material to the question of whether Ms. Atkins materially breached the insurance policy." *Id.*

refused to cooperate with the HIPAA release, Tennessee Farmers scheduled examinations under oath with their attorney to obtain the information it needed to process Mr. Ponnapula's claim. As discussed above, the Ponnapulas twice failed to appear for their examinations. Soon after, Mr. Ponnapula filed this lawsuit. Thereafter, Tennessee Farmers informed the Ponnapulas that it was denying the remaining bodily injury claim due to their failure to cooperate in the investigation of the claim, as required under the insurance policy.

Lastly, Mr. Ponnapula argues in his brief that "Tennessee law requires [a] showing of prejudice for [an] insurance company to defeat liability, even if the insured individual has failed to abide by [the] terms of [the insurance] policy." Although this argument is disorganized and difficult to understand, we deduce that Mr. Ponnapula asks this Court to extend the Tennessee Supreme Court's holding in *Alcazar v. Hayes*, 982 S.W.2d 845 (Tenn. 1998) to this case. Briefly, in *Alcazar*, an insured provided his insurer with notice of an automobile accident one year after the accident. *Id.* at 847. The sole issue on appeal was whether an insurance policy is automatically forfeited when the insured fails to comply with the policy's *notice* provision, regardless of whether the insurer was prejudiced by the delay. *Id.* Citing certain public policy considerations, the Tennessee Supreme Court held that courts must "take into consideration the degree to which [an] insurer has been prejudiced by the delay in notice." *Id.* at 853. Seemingly extending *Alcazar* to the facts in this case, Mr. Ponnapula argues that there "is a genuine question of material fact whether any prejudice occurred to [Tennessee Farmers] by [Mr. Ponnapula] not giving an examination under oath . . . ." If Mr. Ponnapula desired this Court to consider whether an insurance company must be prejudiced by an insured's failure to cooperate before it could be released from liability under an insurance policy, he should have designated this question as an issue for this Court's review, but he did not. Rather, Mr. Ponnapula's stated issue is whether there was a genuine issue of material fact that he "breached his duty under the insurance policy to cooperate in giving an examination under oath." Indeed, this is a separate question from whether Tennessee Farmers must be prejudiced for it to be released from liability under the insurance policy.

The contents of appellate briefs are governed by Rule 27 of the Tennessee Rules of Appellate Procedure, which requires an appellant's brief to list "[a] statement of the issues presented for review . . . ." Tenn. R. App. P. 27(a)(4). The statement of the issues is vitally important to the appeal as it provides this Court with the questions that we are asked to answer on review. The statement is also significant because our "[a]ppellate review is generally limited" to those issues listed in it. *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) (citing Tenn. R. App. P. 13(b)). Indeed, "[c]ourts have consistently held that . . . [a]n issue not included [in the statement of the issues] is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Accordingly, appellants should endeavor to frame each issue "as specifically as the nature of the error will permit," *Hodge*, 382 S.W.3d at 335 (citing *Fahey v. Eldridge*, 46 S.W.3d 138, 143-44 (Tenn. 2001); *State v. Williams*, 914 S.W.2d 940, 948 (Tenn. Crim. App. 1995)), as this Court is not required to "search[] for hidden questions" in appellants' briefs. *Hodge*, 382

S.W.3d at 334 (citing Bryan A. Garner, *Garner on Language and Writing* 115 (2009); Robert L. Stern, *Appellate Practice in the United States* § 10.9, at 263 (2d ed.1989)). Having failed to include as an issue whether a showing of prejudice was required before Tennessee Farmers could be released from liability under the policy, Mr. Ponnapula has waived this issue.[4]

In its final order, the trial court found that there was no genuine issue of material fact concerning Mr. Ponnapula's noncompliance with the terms of his insurance policy. The trial court concluded that, "[b]y failing to answer questions under oath when requested by Tennessee Farmers, [Mr. Ponnapula] has materially breached the insurance policy[.]" As discussed above, Mr. Ponnapula was given multiple opportunities to comply with the requests of Tennessee Farmers in processing his claim. During this time, he was informed that there was no settlement agreement between the parties. Furthermore, two representatives from Tennessee Farmers reminded Mr. Ponnapula of his duty to cooperate under the insurance policy and that his failure to do so could result in the denial of his claim. Much like the *Spears* appellants, although Mr. Ponnapula cooperated at first, *i.e.,* provided certain medical bills, he initially refused to sign a HIPAA release, refused to provide his tax returns, and repeatedly refused to submit to an examination under oath before filing the underlying lawsuit, which led to the denial of his claim. *See Spears*, 300 S.W.3d at 682-83. Thus, based on the facts in this case, we conclude that the trial court did not err in determining that Mr. Ponnapula's refusal to submit to an examination under oath constituted a material breach of the insurance policy. Accordingly, we affirm the trial court's grant of summary judgment.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellant, Murali Ponnapula, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

---

[4] We note that *Spears* was decided eleven years after *Alcazar*, and the *Spears* Court neither discussed *Alcazar* nor required a showing of prejudice to deny recovery when the Spearses breached their duty to cooperate under the insurance policy.